(No. 33480.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SHIRLEY HAMBY, Plaintiff in Error.

*Opinion filed September 23, 1955—Rehearing denied Nov. 21, 1955.*

CHARLES B. EVINS, and HOWARD T. SAVAGE, both of Chicago, for plaintiff in error.

560

· ·Latham Castle, Attorney General, of Springfield, and John Gutknecht, State's Attorney, of Chicago, (John T. Gallagher, Rudolph L. Janega, Fred G. Leach, and George W. Schwaner, Jr., of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

Shirley Hamby was indicted in the criminal court of Cook County for the unlawful sale of heroin to Vivian Barrymore. She pleaded not guilty, waived a trial by jury, was tried by the court and found guilty. Her application for probation was denied, and she was sentenced to a term of two to five years imprisonment in the State Reformatory for Women at Dwight.

We consider first her contention that the evidence did not establish her guilt beyond a reasonable doubt. Vivian Barrymore and officer Sims, the arresting officer, testified for the prosecution. Their testimony was that Vivian Barrymore, an admitted narcotic addict, was arrested on the morning of March 25, 1954; that she cooperated with the arresting officers, who supplied her with five marked one-dollar bills to buy narcotics; that she went to defendant's apartment and bought heroin from the defendant and paid her the marked money. She then left defendant's apartment and turned over to the waiting police officers the glacine bag containing heroin which she received from the defendant. Before she went to defendant's apartment, her clothing was thoroughly searched, and after the search she was continuously in police custody. She was not carrying any narcotics when she entered defendant's apartment. Defendant admitted that she received the five one-dollar bills from the prosecuting witness, but testified that she received them in partial payment of a loan made several days earlier.

The contention that the evidence was insufficient to establish guilt beyond a reasonable doubt rests upon cer-

tain discrepancies in the testimony of Vivian Barrymore and officer Sims, and upon the fact that Vivian Barrymore was an admitted narcotic addict. Defendant urges that the evidence shows that Vivian Barrymore was not adequately searched before she went to the defendant's apartment, and suggests the possibility that she brought with her the heroin which she later turned over to the police officers. Vivian Barrymore was arrested in the course of a narcotic raid. She testified that when she was arrested she was in bed, and that she was told "to get up and get dressed, so I told them I did not have any clothes on, I had a slip on, so he says, 'Well, step out into the kitchen.' " Officer Sims testified, "Vivian was in bed when we entered. I told her to get up, and she told us she had nothing on. She was in bed." Thereafter she went into the kitchen and the arresting officers searched each item of her clothing before handing it to her. They found narcotics in her skirt. Later that morning she led the police to the defendant's apartment where she purchased the heroin. The search was adequate, in our opinion, and such discrepancies as there are in the testimony concerning it are not serious.

Upon Vivian Barrymore's direct examination there was no description of the circumstances surrounding her arrest and the search of her clothing. The details of the episode were brought out upon cross- and redirect-examination. Upon her cross-examination, she testified that when she first saw Sims and Bryson no policewoman was with them. When she was then asked, "Prior to your going into this defendant's home, had any police matron or any policewoman searched you?" she answered, "Yes." The questioning continued: "What policewoman searched you? A. I didn't have to be searched because I was in bed when they come. Q. I said did any police matron or any policewoman search you before you went to the home of this defendant? A. No. Q. And the only search that was conducted was conducted by these police officers, isn't that

right? A. That's right." Defendant argues that this testimony shows that she deliberately perjured herself by saying she had been searched by a policewoman or police matron, "which would tend to indicate a more thorough search than that purportedly conducted by the two male arresting officers only later changing this testimony to an incomplete delineation about her not having 'to be searched because I was in bed when they come * * *' then later changing to the positive statement that she was not searched by any police woman but the only search conducted was that conducted by the male arresting officers." Her testimony shows clearly that she was searched only by the arresting officers and not by a policewoman. Her first statement to the contrary appears to have been an inadvertent response which she quickly corrected. It does not indicate perjury.

It is true that Vivian Barrymore was, by her own testimony, a narcotics addict, and that fact has an important bearing upon her credibility. (*People* v. *Crump,* 5 Ill. 2d 251, 261.) It is also true that while she was not technically an accomplice (*People* v. *Abair,* 102 Cal. App. 2d 765, 228 Pac. 2d 336,) her situation was sufficiently similar to that of an accomplice to warrant close scrutiny of her testimony for that additional reason. It does not follow, however, that her testimony must necessarily be disbelieved. She was corroborated by officer Sims, and as to her presence in the defendant's apartment by the defendant herself. The credibility of her testimony was a matter for determination by the trial court.

The defendant denied that she sold any narcotics to Vivian Barrymore. She testified that she had previously found Vivian Barrymore using narcotics in her apartment and had ordered her out; that Vivian Barrymore owed her money, and that she admitted Vivian Barrymore to her apartment on the day in question because she said she had brought some money to apply upon her indebtedness.

The weight to be given the defendant's testimony was also for the trial court to determine. In our opinion the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt.

The defendant also argues that the trial court erred in denying her motion for probation without hearing evidence in mitigation and aggravation, and without requiring an investigation by a probation officer. The record shows that no evidence in aggravation was offered, and that the defendant made no attempt to offer evidence in mitigation. The argument is thus reduced to the narrower proposition that whenever an application for probation is made, there must be an investigation by a probation officer before the judge can act upon the application.

After both sides had rested the following occurred:

"The Court: Finding guilty of unlawful sale of narcotics. I don't believe either of them." [Referring to the defendant and a witness who had testified in her behalf.]

"Mr. Evins: Application for probation.

"The Court: Two to five years in the penitentiary.

"Mr. Evins: Judge, may I make an application?

"The Court: The application for probation is denied because I have announced a sentence and I have always felt that when women or men who sell narcotics are found guilty they are certainly never entitled to probation or any consideration from the court.

"The Defendant: Judge—

"Mr. Evins: Wait just a minute.

"The Court: People who sell that stuff are responsible for the murders and crimes committed here by these poor addicts. The application for probation is denied. Two to five years in Dwight."

We have held that the discretion of the trial court in granting or refusing probation is not subject to review. (*People* v. *Brown,* 392 Ill. 519, 523; *People* v. *Denning,* 372 Ill. 549.) The argument here, however, is not that

the trial judge erroneously exercised his discretion, but rather that he arbitrarily refused to exercise it. The argument is based upon *People* v. *Donovan,* 376 Ill. 602. There the defendant was twenty years old and was not represented by counsel. He was sentenced to imprisonment in the penitentiary upon his plea of guilty to a charge of forging a ten-dollar check. The judgment was reversed upon two grounds: (1) the defendant had apparently pleaded guilty in the belief that the court would admit him to probation, and since the record indicated that the defendant had not been adequately advised as to his rights, it was immaterial whether his belief was well founded or not, and (2) the defendant, "a minor not represented by counsel, was summarily sentenced to the penitentiary without an opportunity to be heard on the question of mitigation, or of any facts that might tend to show it was to the best interests of society and the defendant that he be admitted to probation."

In the course of its opinion the court said: "The discretion the court may exercise upon an application for probation is not an arbitrary discretion to be exercised at the mere will or whim of the court, but is a sound legal discretion dependent for its exercise upon the facts shown. It is obvious that where the facts are not shown and are not inquired into, the denial of probation is an arbitrary and unauthorized exercise of the power. When paragraphs 732 and 786 [of the Criminal Code] are considered together, * * * it is manifest the legislature intended not only that an application for probation shall be investigated by the probation officer, but that the People and the defendant are entitled to have the court hear evidence in aggravation and mitigation of the offense, as bearing upon the question of whether the defendant shall be admitted to probation, as well as the conditions to be imposed, in case probation is granted. * * * The claim of defendant in error that paragraph 786 requires an investigation only when an application for probation is granted, and has no

application to a request for probation which is denied, is so groundless as to need no discussion. The language 'and such other facts as may aid the court in determining the propriety of probation' clearly demonstrates that the legislature intended an investigation of the facts in every application for probation. * * * Paragraph 786, which is now in force, is mandatory in the requirement for an investigation by the probation officer."

Subsequent decisions have limited the sweep of the language used in *People* v. *Donovan*. In *People* v. *Syer*, 400 Ill. 444, a full hearing on the merits resulted in a verdict of guilty of armed robbery. In this court it was contended that the judgment must be reversed because the trial court refused to order an investigation upon defendant's application for probation, but summarily denied it. The case was here upon a common-law record, and this court said (p. 444) : "Plaintiff in error was * * * represented by counsel and a trial by jury was had. After a full hearing on the merits and after his motions for a new trial and in arrest of judgment were overruled, he then moved for probation. The evidence heard on the trial is not before us, but evidently the court was satisfied to act upon it without an investigation being made. * * * Where a case is tried on its merits and a motion for probation follows which is denied without evidence being heard on the motion we must assume that the court did not thereby abuse its discretion unless the contrary is made to appear by a proper bill of exceptions." And in *People* v. *Brown*, 392 Ill. 519, the defendant was indicted for manslaughter, tried by the court, found guilty and sentenced to the penitentiary. Defendant's counsel had asked whether the court would consider probation and the trial judge had stated that he would accept the motion, but would refuse probation, saying: "Except for this particular act, of course, his reputation and his conduct have been apparently all right. But from this evidence the court is

not justified in giving probation. I could have an examination made, but it wouldn't disclose any more than we probably know here. He is lucky he is not charged with murder." In its opinion this court distinguished the *Donovan case*, saying: "In this case the court did receive the application for probation, and did consider that the defendant's reputation and previous conduct were good. He did determine, however, that the facts surrounding the commission of the crime were so serious that he would not be justified in granting probation. When facts which could have been shown by hearing are considered as proved by the court, there could be no abuse of discretion in denying probation in this case."

In the *Brown case* the trial judge explicitly assumed that the facts disclosed upon an investigation by a probation officer would be favorable to the defendant. Nevertheless he denied probation because "the facts surrounding the commission of the crime were so serious that he would not be justified in granting probation." In the present case the trial judge's concern with the nature of the defendant's crime was made explicit. His assumption of a favorable past record was not. It does not follow, however, that his action in denying probation must be set aside.

The statute requires the judge to consider both the offender and the offense. It provides: "Any defendant * * * may * * * be admitted to probation * * * where it appears to the satisfaction of the court both that the defendant is not likely again to engage in an offensive or criminal course of conduct and that the public good does not require that the defendant shall suffer the penalty imposed by law." (Ill. Rev. Stat. 1953, chap. 38, par. 785.) It does not prescribe the weight to be given to each of the elements to be considered. Nor does it preclude the possibility that in a particular case or class of cases the character of the offense may be thought to dominate the characteristics of the offender.

Here the record shows that the trial court was of the opinion that the defendant was guilty of a serious offense and had lied in her testimony. While we are of the opinion that a less summary disposition of the matter would have been more consistent with proper judicial administration, we are of the opinion that prejudicial error was not committed.

We hold, therefore, that the court did not err in failing to direct an investigation by a probation officer. To the extent that *People* v. *Donovan,* 376 Ill. 602, conflicts with the views expressed in this opinion it is overruled. The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*