(No. 36974.—▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THOMAS PERKINS, Plaintiff in Error.

*Opinion filed November 30, 1962.*

LEONARD R. KOFKIN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and EDWIN J. BELZ, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

The defendant, Thomas Perkins, was indicted on charges of possessing, dispensing and selling narcotic drugs, and, following a bench trial in the criminal court of Cook County, was found guilty of the unlawful sale of narcotic drugs; his post-trial motions were denied, and he was sentenced to the Illinois State Penitentiary for a minimum of ten years and a maximum of ten years and one day. The cause comes before us on writ of error to the trial court.

On the morning of February 22, 1960, William Dantzler, an informer, met three police officers in the vicinity of 1226 East 47th Street. The informer removed all of his clothing in the police auto, was thoroughly searched and thereafter given five $1 bills, the serial numbers of which had been marked on a piece of white paper to which he affixed his signature. He then dressed and left the officers.

Dantzler testified that he went to room No. 405 in a building located at 1226 East 47th Street, and knocked on the door. It was opened and he was admitted and there had a conversation with the defendant in which the defendant told the witness that he had some "stuff" but that they would have to go out into the street to get it; that the informer, the defendant, and a third person sat and visited for a few minutes; the defendant and the witness then left, going to a building at 4714 Evans Avenue. At this place the informer was told by defendant to wait in the hallway, the informer gave the defendant the five $1 bills, and in about ten minutes the defendant returned and gave to Dantzler a small tinfoil package. The witness then returned to the officers who accompanied him back to the 1226 East 47th Street address, going to room 405 where the witness knocked on the door. It was again opened by the same individual who had previously opened it, the officers and the informer went into the room, and the defendant was there arrested. The witness also testified that he was present in the hallway at the time that the defendant and the officers conversed, but that he did not know what was said by any of the individuals. The witness further testified that he had co-operated with the narcotics bureau for the past 8 years, and had previously worked with several of the officers who were involved in the instant arrest; that the witness did on occasion get meal tickets and money from the States Attorney's expense funds. The witness denied that he had been told that he could use narcotics without being arrested and prosecuted, but did admit that he used narcotics. The witness also admitted his prior conviction of possession of narcotics and the fact that he had been sentenced on that charge in 1949 and arrested on a number of other occasions since then.

Police officer Kearns testified and corroborated the informer's version of the transaction, adding that he had performed a field test upon the white powder in the packet given him by the informer. Officer Kearns further testified

that upon entering defendant's room, the police officers identified themselves as such, asked the informer if any of the individuals in the room had sold him narcotics, and the informer pointed out Thomas Perkins as the man from whom he had bought the heroin. All of the individuals in the apartment were then searched, but none of the marked money was found, nor were any narcotics discovered. Officer Kearns further testified that he was then told by the defendant that the defendant had not sold heroin to William Dantzler, but had given it to Dantzler and that the defendant would not tell the officer where the money was because the officer would "have a sale on him"; that the defendant indicated he would like to co-operate and reveal his source of supply, whereupon the defendant was arrested and taken into custody. None of the marked money was ever located. Officer Kearns further testified on cross-examination that as the officers entered the room Thomas Perkins was "in the act of taking a fix" and "he threw the needle down."

Officer Bingham testified that he had been with officer Kearns and the informer on the day upon which the arrest was made, and generally corroborated officer Kearns's testimony, adding the statement that the officers followed Dantzler in the police car when the informer left the East 47th Street address to go to the Evans Avenue location, saw the informer and another individual whom they later learned to be Thomas Perkins enter the building on Evans Avenue, whereupon the officers left for fear of being discovered and returned to the 1226 East 47th Street address. About 20 to 30 minutes later the informer returned and gave the officers a tinfoil paper; that a field test was there performed upon the powder in the paper, following which the officers and Dantzler went to Perkins's apartment where he was arrested. Officer Bingham's testimony also corroborated that of officer Kearns insofar as the statements made by the defendant are concerned.

It was stipulated that Andrew Principe, a chemist in the

Chicago Police Scientific Crime Detection Laboratory, would testify, if called, that he had examined the contents of the tinfoil packet, subjecting it to various chemical identity tests which revealed the substance to be heroin.

The defendant was the only witness in his own behalf. He testified that he had been living at the address in question for some three weeks, and had known William Dantzler 10 or 15 years; that he did not sell Dantzler any narcotics on the day in question, although he was with Dantzler that morning, having met him on the street where he conversed with him and walked in the same direction with him; that the defendant went to 47th and Champlain streets to a restaurant where he ate breakfast and returned to his apartment about 10:30 or 11:00 o'clock, and had just finished giving himself "a shot" of narcotics before the police officers and the informer came in and arrested him.

The defendant contends that the trial court erred in finding him guilty on the basis of the uncorroborated testimony of a drug addict who was the only witness to the alleged crime, and further urges that the evidence as a whole does not prove him guilty beyond a reasonable doubt. We have repeatedly held that the fact that a witness is a narcotics addict and a police informer has an important bearing upon his credibility and, while his position is not that of an accomplice, the situation is sufficiently similar to that of an accomplice to warrant close scrutiny of the testimony of such a witness, recognizing the fact that habitual users of narcotics become notorious liars and that their testimony is likely to be affected thereby. (*People* v. *Crump,* 5 Ill.2d 251; *People* v. *Boyd,* 17 Ill.2d 321; *People* v. *Hamby,* 6 Ill.2d 559; *People* v. *Villalobos,* 20 Ill.2d 315.) However, the conviction in this case does not depend upon the uncorroborated testimony of the informer. While the informer was the only witness to the transaction itself in the sense that he is the only witness testifying on behalf of the prosecution who actually saw the narcotics transferred as between

the defendant and the informer, corroboration of the transaction exists in several other forms. Two police officers gave positive testimony to the effect that the defendant, upon his arrest, stated that he had not "sold" the narcotics to the informer, but that he had "given" them to him; that the defendant would not reveal the location of the marked money because, if he did so, the officers would then be in a position to convict him of a sale of narcotics. Further, though less valuable, corroboration exists in the fact that the officers did follow the defendant and the informer from the defendant's residence to the place where the narcotics were secured. It is obvious, under these circumstances, that the conviction does not depend solely upon the uncorroborated testimony of the police informer.

The problem here is essentially one of the credibility of the witnesses. Where a jury trial is waived, the determination as to where the truth lies is the obligation of the trial judge. We have frequently held, under these circumstances, that the finding of the trial court must stand unless we can say that the proof is so unsatisfactory as to justify us in entertaining a reasonable doubt of defendant's guilt. *People* v. *Iannacco*, 11 Ill.2d 55; *People* v. *Barney*, 15 Ill.2d 503.

The evidence on behalf of the prosecution in the case was sufficient to justify a conviction if believed by the trial judge. The judge chose to accept the testimony of the officers and the informer and to disbelieve the unsupported and uncorroborated testimony of the defendant who was the sole witness on his own behalf. We believe he was fully justified in so doing.

The judgment of the criminal court of Cook County is therefore hereby affirmed.

*Judgment affirmed.*