People of the State of Illinois, Defendant in Error, v. Walter Drumwright, Plaintiff in Error.

Gen. No. 49,529.

First District, First Division.

April 27, 1964.

Bruce L. Bower, of Chicago (Winston, Strawn, Smith & Patterson, of counsel), for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and Richard T. Buck, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant was tried by a jury and found guilty of the illegal sale of narcotics. From the judgment and sentence he appeals. It is contended that the evidence was insufficient to convict.

Nathaniel Clayton, an informer, testified that he had occasion to be at the office of the State Division of Narcotics at about 8:00 p. m. on July 12, 1962. They took his clothes off and searched him and his clothing. He was given $15 and left the office with inspector Ware who drove him to the vicinity of 37th and State Streets. Inspector Stevens, who was in the office when Clayton was searched, left about the same time. Clayton got out of the car and walked north to a drive-in located at approximately 3645 S. State Street where he met the defendant and another man. He asked defendant whether he had any stuff. Defendant answered yes and told Clayton to follow him. The three of them walked to a laundromat at 3619 S. State Street. Defendant was carrying a package containing clothes or something. He went to one of the washers, did something there and returned to Clayton. He asked him how many bags he wanted and Clayton said two. Clayton then gave him $10. They left the laundromat

and walked south to 37th Place, east to Wabash Avenue, south on Wabash to 38th Street and then went to an alley behind State Street into which they turned. They went up the alley into a hallway where the defendant took two tinfoil packages out of a cigarette pack and gave them to Clayton. They then walked together on to 38th Street. Clayton walked east to Wabash Avenue where he met inspector Ware who told him to go to 37th and Wabash and get in the car with the other inspectors. Clayton went to the car and gave the tinfoil packages to inspector Stevens.

On cross-examination he testified that he had no other occupation but worked full time as a special employee of the State Narcotics Division. He was paid to make "buys" and to get information, and that his pay depended on how big the buy was and the testimony he gave in the case. "It depends on what type of case I arrange." He testified to having received about fifty to sixty dollars for this case, but that he didn't really remember. Although at first he denied being an addict he admitted he had been using narcotics four or five years; that he had used narcotics five or six times since 1958, and that the last time was about May 1962. He used $5 worth then, which he said is not a strong dose.

Inspector Ware testified that he met Clayton at the office. Clayton was searched by inspector Stevens who found him to be free of narcotics or money. Stevens recorded the serial numbers of bills in his presence. They left the office and drove to 37th and State Streets. During the drive, Ware gave Clayton $15 in prerecorded bills. He saw Clayton meet the defendant and another man in front of the drive-in. He followed them to the laundromat. He saw the defendant go back to one of the washing machines with a small paper bag while Clayton and the other man remained at the front of the store. The defendant returned to

394

them and Clayton gave him some United States currency. The defendant then handed the package to the other man. Defendant and Clayton left the laundromat, walked south to 37th Place, east to Wabash and south to 38th Place, then to an alley between Wabash and State Streets. He walked past the alley, looked in and did not see them and continued on to State Street. He turned around, passed the alley, and as he neared Wabash he saw Clayton and the defendant emerge from the alley. Clayton walked to Wabash Avenue to where he was standing. The defendant then walked across 38th Street. He testified that he could not say if anything passed between Clayton and the other man while they were in the laundromat.

Inspector Stevens testified that he saw Clayton in the vicinity of 37th and Wabash and got two aluminum foil packages containing a white powder from him. It was stipulated that the package contained heroin.

█ The defendant was arrested on July 29, 1962 some seventeen days later, did not take the stand, nor did he introduce any evidence in his behalf. He first contends that, as a matter of law, a conviction based upon the testimony of a paid informer, who is a user of narcotics, will not stand unless it is sufficiently corroborated, and further urges that the evidence as a whole does not prove him guilty beyond a reasonable doubt. The Supreme Court of this State has repeatedly held "that the fact that a witness is a narcotics addict and a police informer has an important bearing upon his credibility and, while his position is not that of an accomplice, the situation is sufficiently similar to that of an accomplice to warrant close scrutiny of such a witness, recognizing the fact that habitual users of narcotics become notorious liars and that their testimony is likely to be affected thereby." People v. Perkins, 26 Ill2d 230, 186 NE2d 330 (1962); People v. Crump, 5 Ill2d 251, 125 NE2d 615 (1955); People v.

Boyd, 17 Ill2d 321, 161 NE2d 311 (1959); People v. Hamby, 6 Ill2d 559, 129 NE2d 746 (1955); People v. Villalobos, 20 Ill2d 315, 169 NE2d 745 (1960); People v. Bazemore, 25 Ill2d 74, 184 NE2d 649 (1962). However, it does not necessarily follow that the testimony of an addict informer must be disbelieved. People v. Bazemore, 25 Ill2d 74, 77, 184 NE2d 649; People v. Barney, 15 Ill2d 503, 155 NE2d 615 (1959).

In essence defendant is attacking the weight and credibility of the informer's testimony. But this court will not substitute its judgment on the matter of the credibility of witnesses and the weight to be given their testimony where the jury saw and heard them testify, unless we can say the proof was so unsatisfactory as to justify a reasonable doubt as to defendant's guilt. People v. Palmer, 26 Ill2d 464, 469, 187 NE2d 236 (1962). The test, in such cases as this, is not whether an addict informer's testimony is uncorroborated, but whether his testimony is credible under the surrounding circumstances. People v. Norman, 28 Ill2d 77, 82, 190 NE2d 819 (1963). The testimony of an accomplice or informer is not rendered incompetent because of his addiction to narcotics, it being merely an additional factor to be considered by the trier of the fact in assessing the probative value of the witness's testimony. In the Palmer case, on page 469, the court said: "While the evidence linking defendant to the scene of the crime is the testimony of his accomplice, Yancey, a convicted felon and a narcotics addict, nevertheless such evidence is competent, even without corroboration, and we have repeatedly held that a conviction can be sustained by the uncorroborated testimony of an accomplice if the trier of fact is convinced of guilt beyond a reasonable doubt, People v. Flaherty, 396 Ill 304, 314, 71 NE2d 779;

People v. Leslie, 18 Ill2d 420, 424, 164 NE2d 3." The court then sustained the conviction.

The defendant relies in his attack on the sufficiency of the evidence on People v. Bazemore, 25 Ill2d 74, 182 NE2d 649, and argues that the police surveillance here is of no greater corroborative value than that held to be insufficient in the Bazemore case. However, in reversing a conviction for the unlawful sale of narcotics, the Supreme Court there held that the wholly uncorroborated testimony of an addict informer, whose testimony had many discrepancies, was insufficient where there was *no* surveillance by the police of any portion of the informer's activities in making the purchase. At page 77 the court said: "This is not a case where the informer's accusation receives corroboration from close police surveillance of the transaction, from an immediate arrest, or from the finding of marked money on the accused, but one which developed in such a way that the informer was at liberty to name almost any person he wished to select as the guilty one."

We find the facts in the instant case differ substantially to those in the Bazemore case. Here, the informer positively identified Drumwright as the one from whom he purchased the narcotics. Inspector Ware corroborated his identification, and otherwise kept as close a surveillance as was warranted and practical under the circumstances. It was not necessary that the officer actually see the transfer. Whatever infirmities attend the uncorroborated testimony of an addict informer so as to require it to be subject to close scrutiny and suspicion, the jury here could have properly considered by accepting the fact that Clayton's testimony was corroborated by the officers who had close surveillance of him, but for the actual

397

transfer of the narcotics. The circumstances in connection with the said actual transfer were strong and credible and it was for the jury to believe or disbelieve.

■ While we agree with defendant's further contention that the corroborative testimony here is "less valuable" than would be an admission of guilt by defendant (People v. Perkins, 26 Ill2d 230, 235, 186 NE2d 330) as probative matter, we nevertheless find that the testimony of the informer, as substantially corroborated by the officer was sufficient to support the conviction.

■ The defendant next argues that the trial court committed prejudicial error in refusing to give defendant's instruction No 11, or any other instruction in its place, concerning the testimony of a user of narcotics. Instruction No 11 reads as follows:

> "The court further instructs the jury that ——— ——— is an admitted habitual user of narcotics, and that habitual users of opium, or other like narcotics become notorious liars and the truth is not in them. The habitual use of narcotics affects the capacity of a witness to observe and to receive accurate impressions, to retain them in his memory, and to correctly relate them, and also his power and inclination to be truthful, and these are all matters which you are to consider in determining the credibility of ——— ———."

The defendant admits that there is no authority supporting the giving of such an instruction. We believe the above statement, made by the Supreme Court in People v. Crump, 5 Ill2d 251, 125 NE2d 615, and People v. Boyd, 17 Ill2d 321, 161 NE2d 311, was never intended as language of an instruction. Fur-

thermore, while the use of narcotics may impair the mind and memory, the extent of the impairment is for the jury's measurement. To have given the above instruction concerning the testimony of a narcotic addict would not only have invaded the province of the jury, who alone are charged with the duty and are given the right of weighing the evidence, but would be equivalent to a ruling that the witness was incompetent, and that as a matter of law, his testimony was entitled to no weight. This is not the law. On oral argument defense counsel conceded the instruction was "too strong." Our Supreme Court, in cases since Crump, have definitely modified the strong language therein contained regarding reliability of the testimony of an addict.

██ ██ However, the defendant urges that the court should have given some cautionary instruction so that the jury would be properly guided in determining the reliability of a narcotic addict's testimony. The giving of a cautionary instruction to the jury in regard to their duties is proper, and rests largely in the discretion of the court. The court did give the following instructions to the jury:

"The jury are the sole judges of the credibility of and the weight which is to be given to the testimony of the witnesses who have testified upon his trial. In weighing the testimony of each witness, the jury should give it careful scrutiny and consider all the circumstances under which the witness testified; his appearance and demeanor on the stand; the relation which he bears to the State or to the defendant; the manner in which he might be affected by the verdict; his manner of testifying, his apparent candor and fairness, or lack thereof, the reasonableness or

unreasonableness of his story, the witness' apparent intelligence or lack of intelligence, the extent to which he is corroborated or contradicted by other credible evidence, if at all, and in short, any circumstances that tend to throw light upon his credibility."

and

"The court instructs the jury that the testimony of an informer necessitates close scrutiny, and you should, throughout your consideration of the evidence, act upon such testimony with great care and caution, and subject it to close scrutiny in the light of all the other evidence in the case.

"You are further instructed that you should consider the influence under which such testimony is given, if any, and whether the purpose of the witness is to shield himself from punishment, to obtain some benefit for himself or to gratify his malice.

"The jury ought not to convict upon an informer's testimony alone unless, after a careful examination of such testimony, they are satisfied beyond a reasonable doubt of its truth and that they can safely rely upon it."

While we feel that an additional cautionary instruction could well have been given, if properly drawn and tendered, failure to do so was not prejudicial to defendant. People v. Nathanson, 389 Ill 311, 59 NE2d 677 (1945). This is particularly so where the informer's interest in the litigation and his status were before the jury and where the other cautionary instructions as to his testimony were given.

■ Finally, defendant contends his right to a fair trial was prejudiced by the inflammatory remarks of the State's Attorney in his closing address to the jury,

in which he dwelled at length upon the evils of the narcotics trade. It has always been held that the People may comment on the evils of the crime and urge fearless administration of justice (People v. Burnett, 27 Ill2d 510 (1963); People v. Woods, 27 Ill2d 393, 189 NE2d 293 (1963)), and while these statements could well have been omitted they were not of such a nature as to deprive defendant of a fair trial.

For the foregoing reasons the conviction is affirmed.

Affirmed.

MURPHY, P. J. and BURMAN, J., concur.