**People of the State of Illinois, Appellee, v. Moczarney Martin, Appellant.**

**Gen. No. 49,614.**

First District, Third Division.

October 14, 1965.

Philip M. Basvic, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John Gannon, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

Moczarney Martin and Alvin Chandler were tried jointly and were found guilty of the unlawful sale of narcotic drugs. The present appeal is that of Moczarney Martin only and his contention is that the State failed to prove him guilty beyond a reasonable doubt.

This case repeats the familiar routine in which an addict-informer under police supervision and using marked money allegedly purchases narcotics from a defendant. The informer herein was Charles Perry, also known as James Dunn, an addict who had worked as an informer for both Chicago police and Federal narcotics agents for several years. On the evening of January 2,

■■■■■■■■

1963, Perry told narcotics officers on duty at police headquarters at 11th and State Streets in Chicago that he thought he could "make a buy." He was driven to Madison and Leavitt Streets which he said was the place he had in mind. Following the procedures usually employed in such cases, one of the officers searched Perry and his clothing and determined that he was not carrying any narcotics on his person and that he had no money. The officers gave him $12.50: a five dollar bill, seven single dollar bills and two quarters. The serial numbers of the bills were recorded on a sheet of paper and Perry checked the list for accuracy, signed it, and returned it to the officers. One of the officers marked his initials on the two quarters so that they also might later be identified. Perry was let out of the car some distance from the corner and the four officers, who had driven to the location in two cars, stationed themselves about the area in order to observe what took place.

The evidence presented by the prosecution and defense as to what then occurred is in conflict. The principal witness for the State was the informer. He testified that he left the police car and walked to the corner where he encountered Martin, whom he had not seen before but whom he knew was a "junkie." He approached Martin and asked him if he had seen Bernice Adams, who was the person from whom he intended to purchase narcotics. Martin replied that he had not and asked Perry if he was looking for something. Perry said that he was and Martin asked him to wait. A few moments later they were joined by Alvin Chandler. Martin told Chandler that Perry wanted something and Chandler asked if Perry had any money. The informer produced the money which the police had given him and, at Chandler's direction, handed it over to Martin. Chandler left for a few minutes while Perry and Martin waited. He returned with a package which he gave to Perry. Chandler walked away, Martin stayed at the corner and Perry sauntered

toward the police car and gave the package to one of the officers who field-tested its content and found it to be heroin. Martin and Chandler were taken into custody at once and the marked money was found in Martin's hand.

Perry's testimony was corroborated by two of the officers. They confirmed that Perry had come to the police station, that he had been driven near the corner of Madison and Leavitt and searched. They saw him go to the corner and identified Martin and Chandler as the two men he met and talked with there. Two of the officers were about three yards from Perry and Martin but were not close enough to overhear their conversation. One officer testified that he saw Perry's hand and Martin's come together; but he did not see the passage of a package between Chandler and Perry. The informer was under the constant observation of one of the policemen from the time he left the car until he returned with the packet of heroin. When arrested Martin told the police that Perry gave him the money and Chandler gave Perry the package. He denied selling the heroin to Perry.

In his testimony Martin denied Perry's version of what had happened and said that he had never sold narcotics to anyone but that he was addicted to their use. He stated that on the night in question he purchased a five dollar bag of heroin for himself from an unidentified seller, then went into a tavern at the corner of Madison and Leavitt. He was coming out of the tavern when Perry, whom he did not know, accosted him and asked if he would "cop" for him; that is, purchase some narcotics for him since for some reason he was unable to do so himself. At first Martin refused but a friend, George Arnold, vouched for Perry, and Martin, in sympathy for the plight of a fellow addict, at last agreed to make the purchase. He gave Perry his five-dollar bag of heroin to hold as security for the money and Perry gave him the $12.50 with which to make the purchase and agreed to give him some of the "stuff" he was to buy. Shortly

thereafter he was arrested and the money was found in his hand. He denied seeing Chandler that night. Arnold was called as a witness for the defense but he testified that he could not recall whether or not he had seen Martin on January 2nd.

Martin has urged numerous grounds in support of his contention that he was not proven guilty beyond a reasonable doubt. One is that he did not act either as a principal or agent in the transaction; that Chandler was the principal and acted for himself, that it was Chandler who told Perry to turn the money over to Martin, who told Perry to wait, who returned with the package and gave it to Perry; that there was no proof that he knew Chandler, acted in his behalf or was employed by him; that he was just a holder of money, an escrowee or bailee, an innocent dupe victimized because he was willing to aid a fellow addict. A second ground is that the informer's testimony is unworthy of belief and that without his testimony there is no case against the defendant. Another is that if a crime was committed the informer participated in it as an accomplice, and that as an accomplice his testimony did not have the corroboration necessary to make it acceptable.

The core of all of this is the credibility to be given the informer's testimony. If he is to be believed the evidence proved that Martin was Chandler's confederate. After ascertaining that Perry was looking for something, Martin asked Perry to wait; their waiting together appeared to be a signal to Chandler who walked up to them a few minutes later. Martin, not Perry, told Chandler what Perry wanted. Martin, not Chandler, received the money from Perry. Martin stayed with Perry until Chandler came back and delivered the heroin. The three men then separated. Perry had the heroin, Martin the money, and Chandler walked to a nearby tavern where he was later arrested. From any viewpoint Martin aided and abetted the illegal sale. The fact that Martin did

496

not touch the package of heroin does not absolve him; the fact that Chandler did not touch the money does not absolve him. If the informer's testimony is accepted both were equally guilty.

In all controlled purchases of narcotics the police enter into alliances of convenience with someone—usually a narcotic user. In the present case the alliance was with a particularly disreputable individual. Not only was Perry a narcotics addict, but he had been convicted of burglary and was under indictment for another burglary at the time this case was tried. He had been placed on probation for the first burglary and knew that if he was found guilty of the second he would be sentenced. He was a professional informer paid for his services, but up to the time he testified he had not been paid for turning in Martin and Chandler. This payment apparently awaited the conclusion of his testimony or the outcome of the trial. There were reasons to suspect his motives and, if unsupported, his testimony. However, many important details of his testimony were substantiated by the police officers, who also testified that no promises had been made to him either as to the amount of his compensation or as to the trouble he was in. They saw him talk to Martin and to Martin and Chandler; they saw him exchange something with Martin; they saw Chandler leave and return; they received a package of heroin from him which he did not have before and they found the marked money on the person he said he gave it to. Although one officer did not watch him at all times after the three men disbursed, another officer had; he was under surveillance throughout the transaction.

 Questions identical to some of those presented here have been before the courts on many previous occasions. The fact that a witness is a narcotics addict and a police informer has a definite bearing upon his credibility as a witness and, while he is not placed by his participation in the sale in the position of an accomplice,

the situation is sufficiently similar to that of an accomplice to warrant close scrutiny of his testimony. People v. Perkins, 26 Ill2d 230, 186 NE2d 330; People v. Villalobos, 20 Ill2d 315, 169 NE2d 745; People v. Boyd, 17 Ill2d 321, 161 NE2d 311; People v. Hamby, 6 Ill2d 559, 129 NE2d 746. These factors, however, affect his credibility but they do not necessarily render it unworthy of belief. People v. Bazemore, 25 Ill2d 74, 184 NE2d 649; People v. Drumwright, 48 Ill App2d 392, 199 NE2d 282. Likewise, the quality and quantity of the evidence supporting his testimony affect his credibility. The test is whether, under all the surrounding circumstances, the testimony of the informer is believable. People v. Norman, 28 Ill2d 77, 190 NE2d 819.

■ ■ Perry's testimony was believed by the court who, as the trier of the facts, had the duty to evaluate it. The court said:

> "I think the testimony of the informer, who has a record, but was under constant surveillance by the police officers, is true, and he is substantiated by the police officers. True, he is not a man of high principles and character. You can't get a man of that kind to make a purchase for you in this kind of a situation.
>
> "I think his testimony was sufficiently corroborated by the police officers to find both of these men guilty of sale. That will be the finding."

We agree with the trial court. The judgment is affirmed.

Affirmed.

SULLIVAN and SCHWARTZ, JJ., concur.