People of the State of Illinois, Plaintiff-Appellee, v. Hurley Mallett, Defendant-Appellant.

Gen. No. 50,186.

First District, First Division.

April 25, 1966.

Charles J. McCarthy, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and George Samels, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant, Hurley Mallett, was found guilty in a consolidated bench trial of the crimes of selling and possessing narcotics. He appeals, contending "that (a) the indictments are defective; (b) the state failed to prove that the defendant was not entrapped; and (c) the state failed to prove beyond a reasonable doubt that the defendant was guilty of the crimes charged."

■ We find defendant's primary contention to be without merit. The indictments did state the date when and the county in which the alleged crimes were committed. People v. Blanchett, 33 Ill2d 527, 212 NE2d 97 (1966) holds such indictments valid and is dispositive of the defendant's claim of error.

To dispose of the other claims of error, it is necessary to review the evidence adduced. Earl Shelby, an admitted drug addict and police informer, testified that on the day charged he went to the Chicago Central Police Headquarters, was searched and then given three five-dollar bills and five one-dollar bills. He was driven, together with police officers Pates, Paschal and Jamison, to an alley near Albany and Madison Streets. He left the automobile and went to Madison and Albany where he saw the defendant talking to two ladies in front of a tavern near the corner. Shelby said that after defendant got through talking to one of them, "I walks and catches up with him

116

and tells him I knew a couple of friends of mine that used to be in the neighborhood. So he said, 'Oh yes?' I said, 'Yes, I am trying to get me some narcotics, because I am sick.' He said, 'What you want to get?' I said 'Four bags.' He said, 'Well come on, go with me.'" Shelby then followed defendant into a currency exchange, a block down the street where, at defendant's direction, he exchanged the marked money received from the police for a twenty dollar bill. He said defendant "gets the money" which the currency exchange "gives me back." They proceeded over to the counter where defendant reached into a cigarette package and gave Shelby four tinfoil packages. They left the currency exchange and he saw defendant go down the street while he (Shelby) proceeded to the police vehicle. He gave Pates the tinfoil packages.

On cross-examination Shelby admitted being an addict for about ten to fifteen years; he took "hypo" injections; he was not "strung out right now"; he had taken heroin about three or four days before, and he acted as a police informer.

Pates testified that he remained in the car after Shelby got out at about 2:30 or 2:40 p. m.; that Jamison and Paschal went out for a "street surveillance"; that the currency exchange was about two blocks away; that Shelby returned to the car about 3:00 p. m. with four tinfoil packages of white powder which he field tested and found "positive"; and that with his two partners he proceeded west on Madison Street looking for the defendant. They saw defendant who was pointed out by Shelby as the man who sold him the narcotics. Pates called out, defendant broke and ran into a grocery store where the officer saw him take a red package and throw it to the floor. It was a Pall Mall cigarette package and contained three tinfoil packages. Defendant was then placed under arrest. It was about 3:15 p. m. The tinfoil packages

117

were sent to the crime laboratory for testing. It was stipulated that the laboratory tests proved all of the packages contained heroin.

Officer Paschal testified that he left the car and followed Shelby, saw him talk to the defendant, and saw both men walk to the currency exchange. After a period of five or six minutes he observed them come out. The defendant walked east on Madison and Shelby returned to the car.

Defendant testified, and after outlining his activities for the day in question, placed himself at the Pekin Cleaners on Madison "later than 1:00 p. m." He had an argument with some employees there concerning a coat he delivered there previously and which could not be found. He left the cleaner's about fifteen or twenty minutes to three in the afternoon and proceeded to Harry's grocery to do some shopping. He was about to pay for the "things he picked up" when he was apprehended by officer Pates. Pates told him he was arrested as a robbery suspect. "At this time he [Pates] gets on the floor and looks up under the man's counter a few minutes, and I don't know whether he come up with something or what, but when he did stand up he had something in his hand. He just put it in his pocket and there was no more said, nothing to me because I didn't know what it was." Defendant denied selling narcotics to Shelby or ever having narcotics in his possession.

Carrie Slaughter, called by the defendant, said she worked at the Pekin Cleaners and on the day in question saw the defendant there. She couldn't give the exact time "but it was after 11:30 and before 3:30 p. m." Defendant stayed for quite a while because they couldn't locate his coat previously brought in to be cleaned. When asked how long he was in the cleaners she answered: "Fifteen or twenty minutes. Twenty minutes to a half hour, I imagine." A few minutes after defendant left, a gentleman

118

by the name of "Virgil" who was in the store at the time of the "argument" came back into the cleaners and told her that the gentleman who was there a few minutes ago was picked up.

We now consider defendant's contention that the proof does not sustain the conviction of selling narcotics. Defendant claims that the testimony of Shelby, an admitted drug addict and police informer, who was the sole witness to the crucial sale, was unreliable and "not so clear, satisfactory and convincing as to remove all reasonable doubt of his guilt." There was no corroboration of the informer's version of what occurred within the currency exchange.

Defendant cites People v. Bazemore, 25 Ill2d 74, 182 NE2d 649 (1962) as supporting his argument. In Bazemore the informer, unaccompanied by the officers, who remained in a police car about a block away, walked to the vicinity of a pool hall and later returned with two tinfoil packets which were found to contain a derivative of opium. He said he had purchased them from the defendant with the money previously furnished by the police. The police, upon making a search of the area, found no trace of the defendant. Two months later the informer saw the defendant in the same vicinity and pointed him out to the same police officers whom he found seated in a police vehicle a short distance away. Defendant was apprehended at this time. No narcotics were found on his person, nor was any of the inventoried money ever recovered. The court said (p 77): "The credibility of witnesses and the weight to be afforded their testimony are essentially matters to be determined by the court or jury, as the case may be. And while we are loathe to disturb their findings in such matters, we cannot say after a searching analysis of the record that the entirely uncorroborated testimony of Lenier [the informer] is so clear, satisfactory and convincing as to remove all rea-

119

sonable doubt of defendant's guilt. *This is not a case where the informer's accusation receives corroboration from close police surveillance of the transaction, from an immediate arrest, or from the finding of marked money on the accused, but one which developed in such a way that the informer was at liberty to name almost any person he wished to select as the guilty one."* (Emphasis added.)

Defendant further contends that People v. Boyd, 17 Ill2d 321, 161 NE2d 311 (1959) supports this ground for error. In Boyd the state's two principal witnesses were Andrews and Dantzler, admitted addicts and police informers. After reviewing the authorities regarding the weight to be given the testimony of a narcotic addict who is a police informer and applying the principles expressed therein to the facts in the case, the court reversed the conviction which was based solely upon the testimony of Andrews and Dantzler. In describing their testimony the court found:

> Neither of the witnesses claim to have paid money directly to defendant [Boyd] or to have received narcotics directly from him. According to the testimony of both men, the money was paid to Groves [an alleged intermediary] and the narcotics were received from him. The only evidence in the record linking defendant with the sale is the testimony of Andrews that he heard defendant holler that the [marijuana] cigarettes were ready. . . . The whole case must therefore depend upon Andrews's identification of defendant's voice. Considering the fact that, even according to him, he had only heard defendant say four words prior to the time he allegedly said the cigarettes were ready, and further considering that his testimony as to hearing defendant speak in his presence conflicts with Dantzler's testimony and the fact that both Andrews and Dantzler

were police informers and narcotics addicts, we are of the opinion that the State's testimony was insufficient to establish defendant's guilt beyond a reasonable doubt. Pp 326, 327.

We, therefore, cannot consider either Bazemore or Boyd as dispositive of this issue before us.

■ In People v. Drumwright, 48 Ill App2d 392, 199 NE2d 282, (1964), the facts were somewhat similar to those in the instant case. The addict informer and defendant were within police surveillance the entire time except when they went up an alley into a hallway of a building where, the informer testified, the defendant took two tinfoil packages out of a cigarette package and gave them to him. This crucial exchange was not witnessed or corroborated by anyone. It was denied by the defendant. Defendant was arrested seventeen days later. After applying the principle that we would not substitute our judgment on the matter of credibility of witnesses and the weight to be given to their testimony unless we could say the proof was so unsatisfactory as to justify a reasonable doubt as to defendant's guilt, we affirmed the conviction, holding that:

> [T]he fact that a witness is a narcotics addict and a police informer has an important bearing upon his credibility and, while his position, is not that of an accomplice, the situation is sufficiently similar to that of an accomplice, to warrant close scrutiny of such a witness, recognizing the fact that habitual users of narcotics become notorious liars and that their testimony is likely to be affected thereby [citing numerous authorities, including Bazemore and Boyd]. However, it does not necessarily follow that the testimony of an addict informer must be disbelieved [citing authorities]. The test, in such cases as this, is not whether an addict informer's testimony

121

is uncorroborated, but whether his testimony is credible under the surrounding circumstances. Drumwright, pp 396, 397.

In the case at bar the defendant was identified and associated with the informer except for the five or six minute period while they were in the currency exchange, and he was apprehended almost immediately thereafter in possession of other narcotics. We believe the facts and circumstances to be more incriminating than those in Drumwright and we repeat what we said therein:

> It was not necessary that the officer actually see the transfer. Whatever infirmities attend the uncorroborated testimony of an addict informer so as to require it to be subject to close scrutiny and suspicion, the jury [the trier of the facts] here could have properly considered by accepting the fact that Clayton's [the informer's] testimony was corroborated by the officers who had close surveillance of him, but for the actual transfer of the narcotics. The circumstances in connection with the said actual transfer were strong and credible and it was for the jury to believe or disbelieve. Pp 397, 398.

For this reason we find that the defendant's conviction upon the charge of selling narcotics was not erroneous. Next we consider defendant's contention that Shelby's testimony introduced sufficient facts suggesting entrapment, and that therefore there could be no conviction. Although this issue was not raised at the trial level, defendant argues that it need not be specially pleaded or relied upon exclusively because it was clearly suggested in the trial court. Defendant relies upon People v. Strong, 21 Ill2d 320, 172 NE2d 765 (1961). Strong, in disposing of the state's contention that the defense of entrapment was not raised during the trial and could not therefore be raised on appeal, held this argument

122

not well taken because facts suggesting entrapment were presented in detail at the trial and defense counsel raised the point in his closing argument. Be that as it may, Strong, in discussing this subject held that:

> [I]f it appears that officers of the law or their agents incited, induced, instigated or lured the accused into committing an offense which he otherwise would not have committed and had no intention of committing, and if a criminal design or intent to commit the offense originates in the mind of one who seeks to entrap the accused and who lures him into the commission merely for the purpose of arresting and prosecuting him, entrapment is established and no conviction may be had. . . . Entrapment, defined as the "conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion or fraud of the officer," is a valid defense [citing authority]. *The question then is whether the defendant was induced to perform an unlawful act or whether he was apprehended by lawful artifice in the execution of a criminal act of his own conception.* [Emphasis added.] Strong, p 324.

■■ The facts in the cause before us clearly indicate a method or procedure customarily used in the apprehension of those engaged in this nefarious trade. The apprehension of the defendant was by lawful artifice and occurred when the defendant was in the execution of a criminal act of his own conception. We, therefore, find no basis for the claim of entrapment.

■■ Finally, defendant attacks the conviction for possessing narcotics because it rests solely upon the uncorroborated testimony of officer Pates and is denied by him. The trial court accepted the officer's testimony as credible and convincing. We cannot say that it is im-

probable, unconvincing or unsatisfactory or that it fails to establish the guilt of the defendant of this offense beyond a reasonable doubt.

We affirm the convictions entered by the trial court.

Affirmed.

MURPHY and BURMAN, JJ., concur.