**People of the State of Illinois, Plaintiff-Appellee, v. Charles Jackson, Defendant-Appellant.**

**Gen. No. 52,252.**

First District, Third Division.

December 5, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (George L. Lincoln and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

In a nonjury trial the defendant, Charles Jackson, was found guilty of the unlawful sale of narcotic drugs and was sentenced to the penitentiary for a term of ten to twelve years. He contends that the State failed to prove him guilty beyond a reasonable doubt.

A police informer named Eugene Wheeler testified that about 1:00 a. m., November 8, 1965, he went to a police station with narcotics information. Policemen stripped and searched him, gave him $10 in prerecorded bills and took him to the northeast corner of Prairie Avenue and Garfield Boulevard, Chicago. He walked south on

Prairie, crossed Garfield, entered a tavern at 227 E. Garfield Boulevard and arranged to buy some heroin from the defendant. The two came outside, walked east on the south side of Garfield Boulevard, crossed Prairie Avenue and, as they neared the elevated station about 319 E. Garfield, the defendant handed him a small tinfoil package and received the $10. The two then separated and Wheeler signaled the police that the purchase had been made.

The police officer who testified at the trial said that this took place while he was sitting in the police car which was parked north of Garfield Boulevard on Prairie Avenue. He described Garfield as a boulevard having two wide thoroughfares separated by a still wider parkway. He said that both the west and eastbound thoroughfares were the width of five or more automobiles and that the parkway in between was as wide as both of them. He further testified that he used binoculars to keep Wheeler under surveillance and that he saw him walk toward the elevated station with another man. It was two o'clock in the morning and, although the light from the street lamps was fairly good, he could not see well enough to identify the man accompanying Wheeler. When Wheeler signaled the completion of the transaction, the officer left the car, ran across the westbound thoroughfare and was partway across the parkway when a bus, on the eastbound thoroughfare, blocked his view. When the bus passed the man had disappeared. After a few minutes' search the officer gave up and returned to the car. There, Wheeler gave him a tinfoil packet and said that he bought it from a man called "Big Jack." The package contained heroin. A warrant for the arrest of John Doe alias "Big Man" was issued and three months later, on February 11, 1966, the defendant was arrested and charged with the crime.

Wheeler, who had received a two to four-year sentence in 1958 for the unlawful possession of narcotics, admitted

a previous addiction to narcotics but denied having used them since 1961. During cross-examination he was asked to roll up his sleeves and was questioned about scars and little dark marks on the inside of his elbows. He explained that the scars were from the use of narcotics between 1947 and 1958 but that the marks came from detergents which splashed on him in a laundry where he had worked for a month and a half.

In the three years prior to the trial he had been employed for brief periods in three or four jobs. He claimed that he also worked for himself as a salesman, buying items such as lingerie, scarves and jewelry on Maxwell Street and reselling them to patrons on the street, but he never filed an income tax return on any income from this endeavor. In addition, he said he received compensation from individual police officers for acting as an informant, but it amounted to only a few dollars.

Wheeler testified that he knew the defendant before the alleged crime because they served time together in the House of Correction. He further said he knew the defendant's full name; however, the officer testified that Wheeler told him he only knew the defendant's nickname. The officer also revealed an interesting fact which may have thrown some light on Wheeler's use of narcotics. He was asked on cross-examination if Wheeler ever told him that he had purchased narcotics from the defendant before. He replied that Wheeler had, but that the purchase was made indirectly—Wheeler was present when someone else bought narcotics for him.

The fact that a witness is a narcotics addict and a police informer has a definite bearing upon his credibility as a witness and his testimony must be closely scrutinized. People v. Perkins, 26 Ill2d 230, 186 NE2d 330 (1962); People v. Boyd, 17 Ill2d 321, 161 NE2d 311 (1959); People v. Hamby, 6 Ill2d 559, 129 NE2d 746

(1955). But these factors do not necessarily render the testimony unworthy of belief. People v. Bazemore, 25 Ill 2d 74, 182 NE2d 649 (1962); People v. Drumwright, 48 Ill App2d 392, 199 NE2d 282 (1964). The quality and quantity of the evidence supporting his testimony also affects his credibility. People v. Martin, 63 Ill App2d 492, 211 NE2d 753 (1965). The test of the sufficiency of the addict-informer's testimony is whether, under all the surrounding circumstances, his testimony is believable. People v. Norman, 28 Ill2d 77, 190 NE2d 819 (1963); People v. Martin, supra; People v. Drumwright, supra.

Although Wheeler denied an addiction to drugs for three years prior to the sale, his denial is open to question. The marks and scars on his arms and the fact that someone bought narcotics for him arouse suspicion. Other matters in the record also cast doubt on his credibility. He received favors from the police; he held no regular job and if his story about being a salesman is true his honesty is questioned by his failure to report the income for tax purposes; he did not give the full name of the man from whom he bought the heroin to the police and told them he did not know it, although he said at the trial that he knew it all the time.

Further, Wheeler's accusation lacked corroboration. A policeman was at the scene but could not identify the defendant as the person with Wheeler. The defendant was not arrested at the time of the sale or shortly thereafter. He was not found with the prerecorded money in his possession. Three months elapsed before he was arrested. There was no evidence that he was in the tavern or the area on the morning when the sale took place.

Wheeler could have named anybody as the person from whom he purchased the narcotics—at least anybody of a similar size and form as the man seen by the officer. His testimony without corroborative evidence is insuf-

ficient to prove the defendant's guilt beyond a reasonable doubt.

The judgment is reversed.

Reversed.

SCHWARTZ and SULLIVAN, JJ., concur.