**People of the State of Illinois, Defendant in Error, v. Jesse E. Johnson, Plaintiff in Error.**

**Gen. No. 50,918.**

First District, Fourth Division.

September 16, 1966.

David N. Rosner, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (James Gildea, Assistant State's Attorney, of counsel), for defendant in error.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Defendant was indicted for the unlawful sale of narcotics (Indictment No. 62–2655) and in a separate indictment (No. 62–2656) was charged with burglary. He was convicted after a bench trial of the former charge and was sentenced to the penitentiary for not less than ten years nor more than ten years and one day. Defendant pleaded guilty to the burglary charge and was sentenced to the penitentiary for not less than one nor more than three years, the sentences to be served concurrently. Defendant sued out a writ of error in the Supreme Court with regard to the proceedings under both indictments and the cause was transferred to this court. No error is now urged with regard to the plea of guilty under Indictment No. 62–2656. In his appeal from the conviction under Indictment No. 62–2655 defendant contends (1) that he was not proven guilty beyond a reasonable doubt of the unlawful sale of narcotics, and (2) that the package of narcotics which he allegedly sold was improperly introduced into evidence.

The defendant was arrested on September 13, 1962, and charged with the illegal sale of narcotics to Willie Jordan, a police informer, on August 3, 1962. According to the evidence adduced by the prosecution, Jordan had arranged with the defendant at about 1:00 p. m. on August 3, 1962, for the sale of $30 worth of heroin, to be consummated at 5:00 p. m. that same day at 63rd and Morgan Streets; that at about 4:30 p. m. of that day Jordan was searched by three Chicago police officers and Inspector Mitchell Ware of the State of Illinois Narcotics Division; that after finding him devoid of all money and

43

narcotics Jordan was given three prerecorded ten dollar bills; that he was picked up by the defendant in a red automobile on the corner of 63rd and Morgan in Chicago, Illinois, and that defendant told him he had the "stuff," whereupon they proceeded to 64th and Halsted to pick up an unidentified woman after which they drove to an apartment building at 1156 West 65th Street. While the officers attempted to follow the defendant after he picked up Jordan, they lost sight of the defendant's automobile shortly thereafter for a ten or fifteen minute period, but regained sight thereof in time to observe all three occupants of the automobile enter the aforesaid apartment building. The officers remained outside the building. Jordan testified that they went to a third floor apartment and were let in by a young lady named Alice; that defendant told her he wanted to transact some business; that "he wanted to measure out some stuff for me"; that she told them to go to the basement which they did, whereupon the defendant tore open a tinfoil package which he had taken from his pocket and dumped the contents into another piece of foil; that defendant handed the foil package to him but since there was an amount less than one-sixteenth Jordan told the defendant he would pay only $25; that he gave the defendant two of the prerecorded ten dollar bills but retained the other because the defendant had no change; that the three of them reentered the defendant's automobile and proceeded to a grocery store at 62nd and Racine (followed by the officers); that he (Jordan) went into the store alone and bought three bottles of "pop" to procure change for the ten dollar bill; that he returned to the defendant's automobile, gave him $4.70 and defendant departed; and that he (Jordan) then went to Inspector Ware's automobile which was parked nearby and handed him a five dollar bill and the foil package which he had received from the defendant (the package being introduced into evidence as

People's Exhibit 3). The officers did not attempt to recover the prerecorded ten dollar bill which purportedly was cashed at the store by Willie Jordan and none of the other prerecorded bills allegedly given to the defendant was ever recovered. Defendant was subsequently arrested on September 13, 1962.

Willie Jordan stated on cross-examination that he is employed as an upholsterer and works an average of seven to eight months a year and that he is paid by the State of Illinois for his work as an informer. With regard to his rate of pay as an informer Jordan stated:

> Well, it varies. It is usually according to how long it takes to make a case. Therefore, I mean I have my expenses and I get paid by the day. Then also according to how large the case is.

The defendant testified in his own behalf and stated that while he had been an acquaintance of Jordan's for about two years he knew him only as "Howard." Defendant admitted picking up this "acquaintance" (Jordan) and the woman (whom he identified as Opris Williams, a good friend) and driving to the apartment building on 65th Street as testified to by the prosecution's witnesses, but denied having a prearranged meeting with Jordan and also denied complicity in the sale of narcotics. He stated that as he drove by 63rd and Morgan:

> He [Jordan] was standing on the corner. I pulled up to the stop light and he called me . . . . He came over to the car and got in. He asked me would I take him to 65th Street to take care of some business . . . . I took him to 65th right off Racine, and went upstairs to this third floor. He went—he knocked on the door. This woman answered the door. He went into the apartment. I waited outside in the hallway. He was in there for 15 or 20 minutes.

45

Defendant further stated that the aforesaid apartment belonged to one Kenneth White, whom he had known for four or five years, and that he had known the woman, Alice, who answered the door, for about three years; that upon leaving the apartment they drove to 62nd and Racine where Jordan bought some "pop" for which he (defendant) paid; that Willie Jordan never asked him to get narcotics; and that he (defendant) had previously been a narcotics' addict for two and a half years but had broken the habit three or four months prior to his arrest.

Opris Williams, whom the defendant identified as a good friend, was not called to testify.

A stipulation was entered into that if John D. Endriz were to testify, he would testify that he was a chemist employed by the United States Government Revenue Laboratory; that on August 22, 1962, he examined People's Exhibit 3 and determined that it contained the narcotic drugs heroin and dormin.

Defendant asserts that the police informer, Willie Jordan, is "an admitted narcotics user" and that his testimony is uncorroborated. From this defendant argues that he was not proven guilty beyond a reasonable doubt, relying principally upon People v. Bazemore, 25 Ill2d 74, 182 NE2d 649. The instant case, however, is substantially similar to People v. Carter, 69 Ill App2d 448, 217 NE2d 413, in which Bazemore was held to be inapplicable. In Carter the police informer (Theodore Hall), after being subjected to the customary search and examination by two police officers, entered DeMarco's Restaurant with ten prerecorded one dollar bills. The officers took positions outside the restaurant and kept Hall under surveillance through the window. The court further stated the facts at page 450:

> After about 20 or 30 minutes, the defendant, John Carter, emerged from the back of the restaurant, and Hall met him in front and they took a cab to Chicago Avenue and Cambridge, where they left the

cab. They walked north a short distance, turned west at a corner, and entered defendant's apartment. While in a small entranceway, Hall gave defendant the recorded bills, and defendant went upstairs. Hall saw "an old woman in the kitchen by the sink, and I heard a woman's voice upstairs and John Carter's voice." Defendant returned shortly, and while they were in the entranceway he gave Hall a tin-foil package. They walked back to Chicago Avenue and took a cab back to Division and State, where defendant returned to the restaurant and Hall went over to the officers and handed Officer Tobin the tinfoil package. The officers followed them on both cab trips and saw them while they were walking on Canbridge [sic], but lost sight of them when they turned west at a corner and did not observe them again until they returned on foot and entered the second cab.

The officers field-tested the contents of the tinfoil package and found narcotics. The officers then proceeded to DeMarco's Restaurant and arrested defendant. They searched defendant, the restaurant and his home and did not find the prerecorded bills or any additional narcotics.

In holding that People v. Bazemore, supra, was not controlling the court at page 452 quoted with approval from People v. Romero, 54 Ill App2d 184, 203 NE2d 635:

"Although the testimony of a narcotic addict is scrutinized with caution, his testimony may be sufficient to sustain a conviction if it is credible under the surrounding circumstances. . . . The test is not whether an addict informer's testimony is uncorroborated, but whether his testimony is credible under the surrounding circumstances."

In rejecting the defendant's argument that there was insufficient continuity in the surveillance of the informer

47

to prove him guilty beyond a reasonable doubt, the court stated at pages 452, 453:

> Defendant argues that in the restaurant, Hall may have transferred to the counterman "the prerecorded funds and obtained the narcotic drug, and then, to divert attention from his source of supply, . . . implicated the defendant," and further, "it was not the responsibility of the defense to explain what had actually happened" at defendant's home "since there was no testimony other than that of the informer that a sale of a narcotic drug had occurred there." We note here, however, that with the exception of these two periods, the defendant and the informer were together under the constant surveillance of the police from the time they left the restaurant until they returned, when the informer delivered the tinfoil package to the police officers, and defendant was arrested in DeMarco's.

We would point out that while the defendant in Carter was arrested shortly after the informer handed the foil package to the police, none of the prerecorded funds was ever found on the person of defendant, in the restaurant or at his home.

In the instant case the police kept the informer, Willie Jordan, and the defendant under constant surveillance during the automobile ride with the exception of a fifteen or twenty minute interval. Furthermore, while the officers did not enter the apartment on 65th Street they did observe the defendant, Jordan and a girl enter and leave. Though defendant was not arrested immediately upon receipt of the foil package of narcotics by the officers his identity was known at that time. The trial judge apparently believed the testimony of Willie Jordan, corroborated in part (but at no point contradicted) by the police officers, and did not believe the defendant when he testified: (1) that he picked up a man on the street

48

corner whom he knew only as "Howard" without any prior appointment or arrangement to meet him and went out of his way to drive the latter around to take care of some business; and (2) that he remained in the hallway outside the apartment of Kenneth White for about twenty minutes but was not invited inside. Further casting a shadow upon the reliability of defendant's testimony is: (1) that he claimed that he ceased being a narcotics addict three or four months prior to his arrest after two and one-half years of addiction; and, (2) that he stated on direct examination that he worked periodically as a waiter at McCormick Place, but on cross-examination admitted telling Inspector Ware at the time of his arrest that he worked for Fuller Products.*

██ In People v. Romero, 54 Ill App2d 184, 203 NE 2d 635, the court stated at page 189:

> This court will not substitute its judgment on the credibility of witnesses and the weight to be given their testimony where the trier of fact saw and heard their testimony, unless we can say that the proof was so unsatisfactory as to justify a reasonable doubt as to the defendant's guilt.

We find that the proof in the instant case was not so unsatisfactory as to justify a reasonable doubt as to the defendant's guilt.

█ Defendant also asserts that the package of narcotics which he allegedly sold to Willie Jordan (People's Exhibit 3) was marked "8–6–62" whereas the alleged sale occurred August 3, 1962. From this defendant argues that the aforesaid package of narcotics was improperly admitted into evidence. The package in question was unequivocally identified by Inspector Ware as being the same one which he received from Jordan on August 3.

---

* On redirect examination the defendant stated that he was not actually working for Fuller Products but that he would buy merchandise from them and sell it himself.

Moreover, there is no testimony that he marked the date on the package simultaneously with marking his initials nor that the date of the alleged sale is the date which is customarily marked on the package. We find no error in admitting People's Exhibit 3 into evidence.

Therefore the judgments of the trial court are affirmed.

Affirmed.

ENGLISH and McCORMICK, JJ., concur.