People of the State of Illinois, Defendant in Error, v. Willard Hill, Plaintiff in Error.

Gen. No. 51,001.

First District, Third Division.

May 4, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty and Frederick F. Cohn, Assistant Public Defenders, of counsel), for plaintiff in error.

■■■■

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Morton E. Friedman, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The defendant was indicted for the unlawful sale of a narcotic drug. He was tried without a jury, found guilty and sentenced to the penitentiary for a term of ten to twenty years. He contends that the State failed to prove him guilty beyond a reasonable doubt.

The conviction was based on the testimony of an inspector of the Division of Narcotic Control of the State of Illinois, and an admitted narcotics addict who occasionally worked for and received irregular compensation from the inspector.

The inspector met the informer by appointment, searched him and gave him $25 in bills the serial numbers of which had been prerecorded. They drove in the inspector's car to the vicinity of Adams and Halsted streets, Chicago. The informer entered a tavern and the inspector followed a few minutes afterwards. They sat at adjacent tables. The informer was joined by a man he knew and later by the defendant. He told the defendant he wanted to buy a package of heroin. After some negotiation about the quality, amount and price, the terms were agreed upon and the defendant left the tavern. The informer and his acquaintance stayed at the table until they saw the defendant returning and then went outside to meet him. The three crossed the street and entered the doorway of a hotel. Just inside the door, according to the informer, the defendant gave him a tinfoil packet and he gave the defendant $16. The informer came out but the defendant and the other man stayed in the hotel. Two blocks from the hotel the informer gave the packet to the inspector.

While sitting in the tavern the inspector overheard part of the conversation between the informer and defendant. He heard the informer say: "Well let me try it. Let me see what kind of stuff it is." He could not hear what the defendant responded as the defendant had his back to him. He saw the defendant leave and return and saw the three men enter the hotel. He testified that they were inside not more than a minute or two. The informer then came out and walked away. The inspector followed him, received the packet, extracted a small portion and made a field test. The test indicated the presence of an opiate. The defendant was not arrested until five or six weeks later. The inspector explained the delay by saying that he had looked for but could not find the defendant between the day of the sale and the day of the arrest.

The defendant did not testify at the trial and did not introduce any evidence in his own behalf.

The defendant points out that proof of what transpired in the entrance to the hotel depends upon the testimony of an admitted narcotics addict. He argues that it is more reasonable to believe that the informer bought the heroin from his acquaintance rather than from the defendant, whom he met for the first time that day. He points out that the acquaintance lived in the hotel where the alleged purchase was made, and that the inspector testified that the informer told him he had given $5 of the inspector's money to his acquaintance. The defendant suggests that the informer could have selected the defendant as his victim in order to maintain his relationship with his friend.

██ ██ The crux of the case is the credibility of the informer. If he is to be believed the evidence proved the defendant's guilt. The fact that a witness is both an informer and a narcotics addict has a definite bearing upon his credibility; his testimony, like that of an accomplice, must be carefully scrutinized. These factors,

119

while they affect the witness' credibility, do not necessarily render him unworthy of belief. The quality and quantity of the evidence supporting his testimony must also be considered. The test is whether, under all the surrounding circumstances, the testimony of the informer is believable. People v. Martin, 63 Ill App2d 492, 211 NE 2d 753 (1965); People v. Drumwright, 48 Ill App2d 392, 199 NE2d 282 (1964); People v. Norman, 28 Ill2d 77, 190 NE2d 819 (1963).

The defendant relies upon People v. Bazemore, 25 Ill 2d 74, 182 NE2d 649 (1962) and People v. Watkins, 68 Ill App2d 389, 216 NE2d 494 (1966). In Bazemore the police officers remained in an automobile while the informer walked a block away to the vicinity of a pool hall. He returned with two packets which contained a derivative of opium. He said he purchased them from the defendant. The defendant was not arrested until two months later when the informer pointed him out to the same officers. The court held that the uncorroborated testimony of the informer was not so clear, satisfactory or convincing as to remove all reasonable doubt of the defendant's guilt. The court said:

> "This is not a case where the informer's accusation receives corroboration from close police surveillance of the transaction, from an immediate arrest, or from the finding of marked money on the accused, but one which developed in such a way that the informer was at liberty to name almost any person he wished to select as the guilty one."

In People v. Watkins, 68 Ill App2d 389, 216 NE2d 494 (1966), the court also found the testimony of the informer to be uncorroborated and reversed the conviction of the defendant. The professional informer, who had been addicted to narcotics, entered a restaurant unaccompanied by police officers where he met two men,

Willis and Ferguson, who introduced him to Watkins. According to the informer, Watkins agreed to sell him heroin, took his money and gave it to Ferguson to have it changed. Ferguson left the restaurant and upon his return gave money to Watkins. Ferguson and Watkins then left. When they came back Watkins had the package but Ferguson took it and walked down the street with the informer. The police, upon receiving a signal from the informer, placed him and Ferguson under arrest. Willis and Watkins were arrested soon thereafter. The police had seen the informer with Ferguson and Willis but had not seen Watkins prior to the time he was pointed out by the informer. No marked money was found on the defendant. Willis, who was a witness in the case, stated twice that the informer handed the money to Ferguson but then said that it was given to Watkins. He also said that Watkins did not return to the restaurant with Ferguson. The court found his testimony unsatisfactory and held that there was no corroboration of that portion of the informer's testimony which implicated the defendant in the sale of narcotics.

■ There are similarities between the Bazemore and Watkins cases and the present one but there are differences too and the cited cases are not dispositive of the present one. In Bazemore the informer's testimony was entirely uncorroborated. In Watkins it was corroborated only by an addict whose testimony was so wavering and self-contradictory that the Appellate Court did not find it credible. In the case at bar, unlike Watkins, a law enforcement official went into the tavern with the informer. In this case, unlike Watkins, the official saw the defendant and the informer together. In this case, unlike Watkins, the official heard the informer talking to the defendant about buying narcotics. That the official did not see the exchange of money and heroin between the informer and the defendant is not fatal to the

■■■■■■

State's case. Convictions have been affirmed in many cases where the exchange was not witnessed if attendant circumstances lent credence to the informer's testimony. People v. Johnson, 75 Ill App2d 42, 221 NE2d 59 (1966); People v. Mallett, 70 Ill App2d 114, 217 NE2d 514 (1966); People v. Carter, 69 Ill App2d 448, 217 NE2d 413 (1966); People v. Jackson, 58 Ill App2d 302, 208 NE 2d 385; People v. Drumwright, 48 Ill App2d 392, 199 NE2d 282 (1964).

■■ Here the circumstances support the informer's story. The informer was under surveillance throughout the transaction with the exception of two minutes. In that two-minute period he received a packet of heroin. He obtained it either from the defendant or his acquaintance. That he did not get it from the latter is reasonably to be inferred from the evidence—apart from the informer's testimony. The informer and his acquaintance were in the restaurant for 20 minutes before the defendant joined them. They stayed together after the defendant departed. They had ample opportunity to do business if they so desired. If they did not want to complete the sale in the restaurant they could have crossed the street to the hotel without waiting for the defendant's return. The conversation overheard between the informer and the defendant, the defendant's departure after this conversation, his return, his being joined by the others and his accompanying them across the street substantiate the informer's testimony that he was the one who sold the heroin.

■■ The trial court saw the informer, heard his testimony and found it credible. An Appellate Court will not set aside a judgment based upon the credibility of witnesses and the weight to be given their testimony unless from a review of the record it finds the proof so unsatisfactory as to justify a reasonable doubt of the de-

fendant's guilt. The total proof in this case was not of that character.

The judgment will be affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.