**People of the State of Illinois, Plaintiff-Appellee, v. McClellan Hudson and Claude Sample, Defendants-Appellants.**

**Gen. Nos. 52,207, 52,208.**

First District, First Division.

February 17, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Truschke, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendants, McClellan Hudson and Claude Sample, were indicted for the unlawful sale of narcotics (Ill Rev Stats 1967, c 38, § 22-3). The defendants pleaded not guilty, waived a jury trial and following a bench trial, were found guilty of the offense charged. McClellan Hudson and Claude Sample were then sentenced to terms of 10 to 15 years and 10 to 12 years respectively, to be served in the Illinois State Penitentiary.

On appeal, the defendants contend (1) that the court erroneously restricted the cross-examination of the prosecution's narcotics informer; (2) that there was insufficient evidence to prove the defendants guilty be-

yond a reasonable doubt of the sale of narcotics; and (3) that it was reversible error for the State to introduce testimony of a separate and distinct offense of the defendant McClellan Hudson.

The record reveals that on August 23, 1966, Robert Bailey, an admitted narcotics addict, was thoroughly searched by two police officers in anticipation of a controlled sale of narcotics. The officers found that Bailey had no narcotics or money in his possession. Bailey was then given $14, consisting of a $10 bill, three $1 bills and four quarters. The money was marked and recorded. After the money had been recorded the police officers drove Robert Bailey to St. Lawrence and 47th Street. Bailey got out of the car on the north side of 47th Street and while under police surveillance met Claude Sample and Harvey Loveless at the corner. The trio were observed talking to each other for a short period of time. Detective Thomas King, who was assigned to the Narcotics Unit Vice Control Division and was one of the officers in the car, testified that Loveless and Sample began walking south on St. Lawrence towards 48th Street with Bailey following a short distance behind. The police drove their car to the middle of the block (between 47th and 48th Streets) and Detective King got out. He moved towards the corner and observed that Sample and Loveless had disappeared leaving Bailey alone on the corner. Sample and Loveless were out of Detective King's sight for about two minutes before they reappeared from an alley and once again began talking to Bailey. Shortly thereafter they walked back to the alley and were observed by King talking to McClellan Hudson. Hudson than walked away—north on St. Lawrence. Sample and Loveless walked over to Bailey, handed him a small packet and then walked east on 48th Street. After Sample and Loveless were apprehended, a field test was administered by the police officers and it was found that

the package Bailey had been given contained heroin. Hudson was later apprehended and the $10 bill, three $1 bills and three quarters, all marked monies, were found on his person.

Robert Bailey, the police informer, testified that he and his clothes were thoroughly searched by the police just prior to the time he was given the marked and recorded money. He said that the police then drove him to the corner of 47th Street and St. Lawrence where he met Sample and Loveless. Bailey told the court that he had known Sample before the occurrence in question. He then stated that he asked Sample and Loveless if "anyone . . . [had] any stuff" and that Sample replied that there was some in the area. Bailey was asked what he wanted and he was told that if he paid $15 that he would receive a "sixteenth." Thereupon he gave Sample the prerecorded money and walked behind the two men as instructed until the two of them went into a gangway of an alley at 48th Street and St. Lawrence. There they met Hudson. Bailey testified that he could not hear their conversation, but he testified that he saw Sample pass the money in his hand to Hudson. Hudson then left and when he returned a short time later he put something in Sample's hand. Sample walked over to Bailey, handed him the package and left. Bailey said he gave the package to Officer King.

On cross-examination Bailey testified that he was a narcotics addict on the day the controlled sale took place and that he had used drugs four days before the trial. He said that he was promised no reward for working with the police, was never given money by the police except for food, and had never been convicted of the unlawful sale of narcotics.

The only other evidence offered was a stipulation between the parties that if Charles Vondrath, a chemist at the Chicago Crime Laboratory, was called as a witness, he would testify that the white powder in the package re-

ceived into evidence was diacetyl morphine hydrochloride, commonly referred to as heroin.

■ We first consider the contention that the trial court unduly restricted the cross-examination of the prosecution's informer witness. We initially agree with the defendants that on cross-examination they should be allowed to develop all circumstances within the knowledge of the witness which will explain, qualify, discredit or destroy the witness's testimony. People v. Welch, 22 Ill2d 558, 177 NE2d 160, and which will shed light on the witness's motive, bias, prejudice, or interest as affecting his credibility even though such development might go beyond the subject matter of the direct examination. People v. Lohman, 13 Ill2d 506, 150 NE2d 116. This rule, we believe, is especially appropriate when the witness is a narcotics addict.

Turning to the record we find that the defendants were denied the opportunity to question Bailey about his source of drugs. The defendants were also not permitted to inquire into how much the witness's "habit" cost per day or into how large a dose of drugs the witness took four days before the trial. The defendants contend that once it is established that an informer is an active narcotics addict it becomes extremely important to ascertain his source of supply. "If the police had paid Bailey in drugs" the defendants assert "he may have been motivated to fabricate the involvement of the defendants to obtain his necessary narcotics." However, the defense counsel was allowed to bring out in his cross-examination of Bailey that after the controlled sale of narcotics in the case at bar, the witness was incarcerated in the County Jail for possession of narcotics; that Bailey was a narcotics addict and that he had used narcotics four days before the trial. The defense counsel was also permitted to examine the arm of the witness, to inquire how long the witness had been an informer, to ask where the witness lived and who he lived with, to discover where the

135

witness worked, and to determine in how many cases the witness worked with the police. We must note too, that the case was tried before the court without a jury.

The very purpose of the extended cross-examination of Bailey was to make the court aware of the possible motive the informer had to testify. We are satisfied that the defendants were given ample opportunity to elicit adequate information from the witness for that purpose. Furthermore, the limit to which cross-examination should be permitted rests soundly in the discretion of the trial judge and we will not interfere with the exercise of that discretion in the absence of clear proof of its abuse. People v. Caldwell, 62 Ill App2d 279, 210 NE2d 556. In light of the facts of the instant case, we cannot say that there was a clear abuse of discretion in the restrictions placed on the cross-examination of the informer and we, therefore, hold that the defendants were not prejudiced in this regard.

The defendants' second contention involves whether the State presented a sufficient amount of evidence to prove them guilty beyond a reasonable doubt of the illegal sale of narcotics. The defendants urge that a narcotic addict informer is completely untrustworthy and that the uncorroborated testimony of such a witness is insufficient to sustain a conviction.

While it is true that habitual users of opium or other narcotics often become notorious liars and the chronic morphinomanic is often a confirmed liar, People v. Crump, 5 Ill2d 251, 125 NE2d 615, the fact that a witness is a narcotics addict bears only upon his credibility. It does not follow that his testimony must necessarily be disbelieved, especially when it is corroborated by other witnesses. People v. Smith, 40 Ill2d 501, 241 NE2d 185.

The defendants argue, however, that there was absolutely no corroboration of the essential elements of the sale of narcotics because the alleged transaction occurred

outside the observation of the police. We cannot agree with the defendants that Bailey's testimony was not corroborated.

Approximately the same claim was made by the defendant in People v. Hill, 83 Ill App2d 116, 227 NE2d 117. In that case an informer, who was also a narcotics addict, participated in a controlled sale of heroin. The actual transaction took place in the entrance of a hotel and out of the sight of the police. The Appellate Court in affirming the defendant's conviction noted that "[c]onvictions have been affirmed in many cases where the exchange was not witnessed if attendant circumstances lent credence to the informer's testimony." People v. Hill, 83 Ill App2d 116, 122, 227 NE2d 117, 120.

■ While we agree with the defendants that the testimony of a narcotics addict should be closely scrutinized, the test which must be employed is whether the addict's testimony is credible under the surrounding circumstances. People v. Carter, 69 Ill App2d 448, 217 NE2d 413. Here the circumstances support the informer's story. Bailey was seen speaking to Sample on more than one occasion. Sample was observed leaving Bailey and going into an alleyway on two occasions. On his return Hudson came out of the alley with Sample and then walked away. Sample handed something to Bailey which turned out to be a package containing heroin. Bailey had been seen handing something to Sample and later the prerecorded money was found on Hudson.

■ ■ The trial court saw the informer, heard his testimony and found it credible. This court will not substitute its judgment on the matter of the credibility of witnesses and the weight to be given their testimony where the trier of fact saw and heard their testimony, unless we can say that the proof was so unsatisfactory as to justify a reasonable doubt as to the defendants' guilt. People v. Romero, 54 Ill App2d 184, 203 NE2d 635. We conclude that the testimony of the informer is corrobo-

137

rated by evidence and the surrounding circumstances in the record and that the testimony was sufficient to establish the guilt of both defendants beyond a reasonable doubt.

The defendants next contend that it was reversible error to introduce testimony of a separate and distinct offense of the defendant, McClellan Hudson. On direct examination of Bailey, and over the objection of defendants, the State brought out that on November 13, 1966, while the instant case was awaiting trial, Hudson attacked Bailey while they were incarcerated, and attempted to intimidate him.

 It is the general rule that admission of a separate and distinct crime in support of the offense charged is normally inadmissible and has been held to constitute reversible error. People v. Gleason, 36 Ill App 2d 15, 183 NE2d 523. However, under Illinois law if the evidence is connected with the crime the defendant is charged with, and is offered to prove design, motive or knowledge, it may be admissible. As stated in People v. Gambony, 402 Ill 74, 80, 83 NE2d 321, 325, "In a criminal prosecution any attempted intimidation of a witness is properly attributable to a consciousness of guilt, and testimony relating thereto is relevant and admissible in evidence." We find the defendants' third contention to be without merit.

Accordingly, the judgments and convictions of the defendants are affirmed.

Judgments affirmed.

ADESKO, P. J. and MURPHY, J., concur.