THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE F. BARNES, Defendant-Appellant.

(No. 54881;

First District—June 2, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, and Jeffrey Shattner, Senior Law Student, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Martin Moltz, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

The defendant, George F. Barnes, was indicted for the unlawful sale of narcotic drugs. In a bench trial in the Circuit Court of Cook County, he was found guilty and sentenced to not less than ten nor more than fifteen years in the Illinois State Penitentiary.

The issue on this appeal is whether the evidence was sufficient to convict the defendant.

We summarize the testimony. On May 16, 1967, Mike Cuellar, a drug addict with an arrest record, agreed to help police officers by taking part in a controlled purchase of narcotics. He said he cooperated because he was angry at being sold drugs of poor quality. At a police station he was stripped and searched and then given two ten dollar bills which had been dusted with fluorescent powder. The serial numbers of the bills had also been recorded. Cuellar was then taken to the Division and Sedgwick area of Chicago, where he purchased narcotics from someone named Chainey. The police arrested Chainey and instructed Cuellar to wait at the corner of Clark and Division Streets. When the police returned, they took Cuellar into the washroom of the Marquis restaurant, where they searched him again and gave him two more tens, which had also been prerecorded and dusted with fluorescent powder.

There is some dispute as to the thoroughness of the second search. Cuellar testified that it was only a pat-down. The two police officers, however, said that Cuellar was strip-searched again.

Cuellar was sent back onto the street, where he met the defendant around Division and Sedgwick. Cuellar testified he shook hands with Barnes and told him he wanted to buy a twenty dollar bag of drugs. When Barnes asked for the money, he was given the two tens provided

by the police. He told Cuellar to meet him around the 1200 block of Cleveland. After Barnes left, Cuellar checked with the two officers who told him to go to the appointed place. They followed him in an unmarked van and then parked opposite where he stood waiting. Two officers hid behind the van, and two hid behind parked cars farther down the street.

About fifteen minutes later the defendant came along and handed Cuellar a tin-foil bag which Cuellar gave to the officers and then continued walking down the street. The defendant was immediately arrested by the police officers. A field test of the tin-foil bag revealed that it contained heroin. This result was confirmed by tests at the Chicago Crime Laboratory.

Officers Brown and Hanrahan corroborated Cuellar's testimony, but neither remembered seeing him shake hands with the defendant. However, Hanrahan did agree that their hands might have touched during the passing of the money. Officer Brown testified he read the defendant's rights to him off a card. The defendant's clothes were thoroughly searched on the spot, but no drugs or money was found.

Hanrahan testified he used a portable ultraviolet light on the defendant, which showed a positive reaction to the hands and pocket. He also quoted the defendant as saying in answer to questioning, "I know you have a sale on me. I stashed the money in the alley." The money was never found.

The defendant testified to a different set of facts. He said Cuellar was talking to another man when he arrived, that Cuellar had just gotten drugs from him, and that Cuellar would share the drugs with him if he provided a hypodermic outfit. Cuellar allegedly told the defendant to meet him in the 1200 block of Cleveland because the police were looking for him and he was too hot. Later, when he approached Cuellar with the outfit, he was told to keep walking because the "Man" was across the street. Barnes testified he threw the hypodermic outfit away within view of the officers because they asked him what he had thrown away. He refused to tell them what it was, and they were unable to find it even though they looked.

Barnes denied the police explained his rights, denied that the police checked his hands or clothes with any equipment, and denied making any incriminating statements.

The defendant attacks the inconsistencies in the testimony of Cuellar and the police, attacks Cuellar's credibility because of his background of narcotics addiction, suggests that defendant's story is much more believable, and speculates that Cuellar was harassed by police into entrapping a fellow addict.

There are differences between the testimony of Cuellar and that of the police regarding the thoroughness of the second search and regarding whether or not Cuellar shook hands with the defendant.

■■ The first difference is inconsequential even though both officers were positive in their testimony, and Cuellar admitted he didn't remember some of the other details too well. Nevertheless, the evidence of the sale does not rest solely on the presumed fact that he had no narcotics before meeting the defendant but did have afterwards. His behavior was monitored very closely during the entire sequence of events. He was observed passing the money to the defendant, and later the defendant was seen passing something to him. In addition, any attempt to retrieve a packet of narcotics from a hiding place not discovered during the alleged pat-down would have been detected. The thoroughness of the search only went to the weight to be given to the testimony of the witness. *People v. Guido* (1962), 25 Ill.2d 204.

■■■ Similarly, whether Cuellar and the defendant shook hands is not conclusive. The defendant maintains that any fluorescent powder on his hands and pocket got there as a result of shaking hands and not from handling the dusted money. However, the police officers saw the money being handed to him, and their testimony is sufficient to establish the transfer of money if believed by the trier of fact.

The defendant relies on several cases which state the testimony of an addict informer is not sufficient to convict if it stands alone, uncorroborated by other evidence. *People v. Bazemore* (1962), 25 Ill.2d 74; *People v. Minor* (1966), 70 Ill.App.2d 464; *People v. Watkins* (1966), 68 Ill.App.2d 389. The instant case is clearly distinguishable from *People v. Bazemore,* in which the court said:

> "This is not a case where the informer's accusation receives corroboration from close police surveillance of the transaction, from an immediate arrest, or from a finding of marked money on the accused, but one which developed in such a way that the informer was at liberty to name almost any person he wished to select as the guilty one."

No less than four officers watched as the money exchanged hands and as the narcotics were passed to Cuellar. He was not free to name anyone of his choice. Neither the *Minor* nor the *Watkins* case is in point, because here there is extensive corroboration.

While the defendant offers an explanation for the presence of fluorescent powder on his hands, he does not offer an explanation for either accepting money or passing something in return. Neither is it necessary for the money to be recovered if there is a plausible explanation. *People v. Realmo* (1963), 28 Ill.2d 510. In that case the court said:

"Here one or more police officers observed substantially all of defendant's activity in making the controlled purchase except the actual transfer of the narcotics and the marked money   *   *   * While none of the marked money was recovered from the informer this is adequately accounted for by his testimony that he gave it all to the 'man in the beige coat' from whom he obtained the drugs."

Although Cuellar's former addiction has a bearing on his credibility, it does not preclude belief where there is corroboration. In *People v. Norman* (1963), 28 Ill.2d 77, the court stated:

"Although the testimony of a narcotics addict must be scrutinized with caution, his testimony may be sufficient to sustain a conviction if credible under the surrounding circumstances."

Here, Cuellar's testimony was substantiated in detail except for the discrepancies already noted. It is also important that he had been off drugs for a year prior to the trial.

■■ Finally, the defense suggests that Cuellar's favorable testimony was the result of police harassment, and the defendant's story was more believable. While police harassment of addicts is not unknown, there is no evidence this was the motivating factor here, nor would the evidence establishing the sale be diminished if the motive were as suggested.

■■ Since this was a bench trial the credibility of the witnessses was to be determined solely by the court. At the conclusion of the evidence the judge stated:

"I should like to make this statement for the record that I have heard many cases during the past ten years where I felt that the State had proven an iron clad case, but I can't remember any case where they have presented more of an iron clad case than they have in this case.

You have a defendant who denies all of the allegations, you have witnesses, number one, a detective of some twenty odd years in the police department, forthright, exacting, no question about his testimony.

You have an informer who at one time was on narcotics but for the past year or so has been clean. And the Court was impressed by his testimony.

You have the Crime Lab Report which positively satisfies the Court and corroborates all of the testimony of all of the witnesses. And against that you have the testimony of George Barnes, which the Court believes to be pure fiction.

Based upon the statement that I have made there will be a finding of guilty."

After reviewing the proceedings in this case, our conclusion is the same as that reached in *People v. Perkins* (1962), 26 Ill.2d 230, where the court said: ·

> "The problem here is essentially one of the credibility of the witnesses. Where a jury trial is waived, the determination as to where the truth lies is the obligation of the trial judge. We have frequently held, under these circumstances, that the finding of the trial court must stand unless we can say that the proof is so unsatisfactory as to justify us in entertaining a reasonable doubt of defendant's guilt. *People v. Iannacco*, 11 Ill.2d 55; *People v. Barney*, 15 Ill.2d 503.
>
> The evidence on behalf of the prosecution in the case was sufficient to justify a conviction if believed by the trial judge. The judge chose to accept the testimony of the officers and the informer and to disbelieve the unsupported and uncorroborated testimony of the defendant who was the sole witness on his own behalf. We believe he was fully justified in doing so."

For the reasons stated, the judgment is affirmed.

Judgment affirmed.

ADESKO, P. J., and BURMAN, J., concur.