THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. OSCAR LOPEZ, Defendant-Appellant.

First District (2nd Division) No. 1—87—3056*

Opinion filed August 29, 1989.

---

*This case was assigned to the second division on April 15, 1989.

1000

Hall & Kurz and Steven H. Sosman & Associates, both of Chicago (Kathryn Hall, Jerry Kurz, and Steven Sosman, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, LaCoulton Walls, and Brian Grossman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Following a bench trial, defendant Oscar Lopez was found guilty of delivery of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)) and sentenced to 15 years' imprisonment. Defendant appeals and raises as issues whether: the State proved him guilty beyond a reasonable doubt and the circuit court improperly denied his motion for a new trial because of an alleged appearance of impropriety stemming from a former attorney-client relationship between defendant and the trial judge.

The evidence established that Fred Kinnie, a paid informant, contacted Thomas Bourgeois, an agent of the Federal Bureau of Investigation (FBI), and told him defendant planned to sell "as much narcotics as he [could] prior to the end of the year," when he would flee the country. Kinnie claimed he had known defendant for several years and still owed him money from a previous cocaine purchase. Defendant, who worked in a hardware store, instructed Kinnie not to use the word "cocaine"; instead, he was to refer to ounces of cocaine as "inches" of "pipe."

At trial, Kinnie testified that on October 1, 1986, he met with Bourgeois and Agents Christopher Hacias and Van Quarles of the Drug Enforcement Agency (DEA), at which time he telephoned defendant. He indicated he needed "2 inches of pipe," and defendant told him "to come on." The price of the cocaine was $4,400.

Agent Quarles searched Kinnie at the DEA office, then drove him to a hardware store located at 2032 West 18th Street in Chicago, where defendant worked. Other surveillance officers followed in separate cars. Quarles parked approximately three-quarters of a block from the store, counted the $4,400 and handed it to Kinnie, who also counted the money before putting it in an envelope. Quarles then

walked into the hardware store while Kinnie waited alone in the car; after a couple of minutes, Kinnie also entered the store.

Defendant, who was talking to a customer, motioned to Kinnie upon noticing him. A short time later, defendant led Kinnie into a room at the back of the store. Kinnie stood near the doorway of the room with his back towards the store and gave defendant the envelope containing the money. After pocketing the envelope defendant reached into a piece of pipe, pulled out a packet and handed it to Kinnie.

Kinnie put the packet in his pocket, exited the store and proceeded toward Quarles' car. Kinnie glanced over his shoulder and saw defendant standing outside watching him. The car doors were locked, so Kinnie crossed the street and continued walking for a half block. As he turned the corner onto Hoyne Avenue, Quarles drove up. Kinnie got into the car, gave the packet to Quarles and was returned to the DEA office, where he was once again searched.

On November 12, 1986, Kinnie and Agent Quarles revisited the hardware store, again for the purpose of purchasing cocaine from defendant. Defendant refused to deal with Agent Quarles, whom he thought was an informant because "he didn't look right."

Kinnie admitted on cross-examination that he made a statement to Agent Hacias on October 1, 1986, which indicated that the price of the cocaine was $1,800 per ounce. He claimed, however, that the price would be $2,200 because he owed defendant money. The statement further specified that Kinnie walked a few blocks after leaving the store before Quarles picked him up; Kinnie responded at trial that this was not correct. He also observed that the statement inaccurately reflected a prior conviction for burglary, then conceded it did not mention previous convictions for armed robbery, forgery and mail fraud. Kinnie acknowledged that the government paid him $500 for his participation in the instant case, and that he had been a paid informer in other investigations.

Special agent Christopher Hacias of the DEA next testified that he met with Bourgeois, Quarles, and Kinnie on October 1, 1986, to formulate a plan to purchase two ounces of cocaine from defendant. In accordance with the plan, Kinnie telephoned defendant at the hardware store and asked for "2 inches of pipe." The price of the cocaine was $4,400, part of which was for repayment of money that Kinnie owed defendant from prior narcotics purchases. The serial numbers on the money were recorded before it was given to Kinnie, but this cash was never recovered. Hacias observed Quarles conduct a pat-down search of Kinnie before leaving the DEA office for drugs, weapons or large amounts of cash, but nothing was found.

Quarles and Kinnie then drove to the store in one vehicle, Hacias and Bourgeois followed in a second, and Agents Johnson and Jones trailed in a third. Hacias parked about 1½ blocks away from the hardware store. He observed Quarles enter, followed about one minute later by Kinnie. After five minutes elapsed, he saw Kinnie exit the store and walk west on 18th Street toward Quarles' car, pause briefly at the vehicle, and continue walking. Hacias also noticed defendant standing in front of the store. Hacias lost sight of Kinnie as he crossed 18th Street onto Hoyne Avenue.

Momentarily, Quarles left the store, went to his vehicle and drove away in Kinnie's direction. Shortly thereafter, Hacias received a radio transmission from Quarles, who reported he had procured a package containing two ounces of cocaine. Defendant was arrested on January 6, 1987.

Quarles' testimony regarding the transaction essentially corroborated the details provided by Kinnie and Hacias. In addition, he averred that when he left the store and walked to his car, he saw Kinnie walking on the street and never lost sight of him before picking him up on Hoyne. When he and Kinnie returned to the office after the transaction, Quarles conducted a field test on the contents of the package, which revealed cocaine.

A subsequent DEA laboratory analysis determined that the package contained 56.36 grams of cocaine. At this point, the State rested.

The circuit court then denied defendant's motion for a directed finding. It commented that Kinnie's testimony, which alone would have been insufficient, was corroborated by the telephone call he made to defendant from the DEA office, the surveillance conducted by several agents, and the searches of Kinnie before and after Quarles' recovery of narcotics from him.

It was then stipulated that: FBI Agent Bourgeois paid Kinnie $500 for his services; Kinnie was promised an additional sum for his testimony at trial; on August 26, 1986, Kinnie told Bourgeois that defendant planned to sell as much narcotics as he could before the end of the year and then flee the country; and, a few days prior to October 1, 1986, someone from the DEA asked Bourgeois to bring Kinnie to the DEA office because a "buy" was going to take place. The defense then rested.

In finding defendant guilty, the circuit court observed Agents Hacias and Quarles were credible witnesses and it believed their testimony. The court also noted Kinnie was the only eyewitness to the transaction and recognized his pecuniary motive to testify. Asserting Kinnie's testimony would be judged by a different standard than that

applied to the agents, the court commented:

> "I do not think that if Mr. Kinnie testified alone without the testimony of the agents that [defendant] could be convicted beyond a reasonable doubt, but because I think Mr. Kinnie's testimony by itself, without any corroboration or support would be so specious because of his background and the fact that he's doing it for the money that that would give me a reasonable doubt.
>
> But, in fact, there is corroboration for Mr. Kinnie's testimony. And the most significant testimony for me in terms of the arguments that I've heard here this afternoon has to do with the testimony of the search at the DEA office."

Finding that Kinnie did not have narcotics or money on his person when he left the DEA office or when he returned, other than the package he turned over to the agents, and further, that Quarles never lost sight of Kinnie, the court concluded sufficient corroboration of Kinnie's testimony existed.

The court found defendant guilty and sentenced him to 15 years in custody of the Illinois Department of Corrections. He appeals, asking this court to reverse his conviction or, alternatively, grant a new trial.

## I

Defendant first contends he was not proved guilty beyond a reasonable doubt. He maintains Kinnie's testimony required close scrutiny, and despite the corroborating evidence provided by the agents, was insufficient to sustain a finding of guilty because: (1) when Kinnie telephoned defendant from the DEA office, he said he needed "2 inches of pipe" and there was no mention of cocaine, and the only evidence that Kinnie meant cocaine was his own testimony; (2) the surveillance by the DEA agents was insufficient corroborative evidence since no one actually observed the alleged transaction between defendant and Kinnie; and (3) the court improperly relied on Quarles' inefficient pat-down search of Kinnie.

■ A reviewing court will not disturb a criminal conviction unless the evidence is so improbable or unsatisfactory that reasonable doubt of defendant's guilt is created; the relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) Applying this principle to the instant case, we find no basis upon which the circuit court's finding can be disturbed.

■ Under the applicable statute, the State was required to prove

defendant knowingly delivered a controlled substance. (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2); *People v. Cortez* (1979), 77 Ill. App. 3d 448, 451, 395 N.E.2d 1177.) Whether the State met its burden in this case depends, to a great extent, upon a determination of the credibility of the witnesses. Defendant contends that the testimony of Kinnie, the only witness to the alleged transaction, was suspect and insufficient to support defendant's conviction because Kinnie was a drug user, convicted felon and paid government informer. The testimony of a narcotics addict-informer must be scrutinized with caution; his testimony, however, may be sufficient to support a conviction if corroborated by other testimony and believable in light of circumstantial evidence, or otherwise credible under the surrounding circumstances. *People v. Hines* (1964), 30 Ill. 2d 152, 157, 195 N.E.2d 712; *People v. Norman* (1963), 28 Ill. 2d 77, 82, 190 N.E.2d 819; *People v. Smith* (1979), 70 Ill. App. 3d 250, 259, 387 N.E.2d 901.

■■ Failure of law enforcement officials to see the exchange of money for narcotics between the informer and defendant is not necessarily fatal to the State's case; convictions may be affirmed "if attendant circumstances lent credence to the informer's testimony." (*People v. Hill* (1967), 83 Ill. App. 2d 116, 122, 227 N.E.2d 117.) Convictions have been affirmed where the only witness to the actual narcotics transaction was an informer searched prior to the meeting with defendant, given money that was marked or had its serial numbers recorded, and monitored closely by law enforcement officials. (*People v. Pittman* (1981), 100 Ill. App. 3d 838, 427 N.E.2d 276, *aff'd* (1982), 93 Ill. 2d 169, 442 N.E.2d 836; *People v. Blackburn* (1971), 133 Ill. App. 2d 404, 273 N.E.2d 472; *People v. Hill*, 83 Ill. App. 2d 116, 227 N.E.2d 117; *People v. Johnson* (1966), 75 Ill. App. 2d 42, 221 N.E.2d 59; *People v. Walker* (1964), 50 Ill. App. 2d 394, 200 N.E.2d 26.) Reasonable doubt as to defendant's guilt does not necessarily result from the fact that the money used in the exchange was not recovered (*People v. Johnson*, 75 Ill. App. 2d 42, 221 N.E.2d 59; *People v. Walker*, 50 Ill. App. 2d 394, 200 N.E.2d 26), or that defendant was not arrested immediately after the transaction. (*People v. Hill*, 83 Ill. App. 2d 116, 227 N.E.2d 117; *People v. Johnson*, 75 Ill. App. 2d 42, 221 N.E.2d 59.) Nor does Quarles' examination of Kinnie, a pat-down as opposed to a strip search, create a reasonable doubt; the thoroughness of a police search prior to the purchase of narcotics only goes to the weight the informant's testimony will be given. *People v. Barnes* (1971), 133 Ill. App. 2d 278, 281, 273 N.E.2d 240.

■■ In light of the foregoing, there is no basis upon which to disturb the circuit court's finding. The court's comments establish that it

carefully scrutinized the testimony of Kinnie and considered it credible only in light of the surrounding circumstances. In finding the essential elements of the offense, the court properly relied on that testimony, the corroborative evidence (particularly, the unproductive searches of Kinnie by Quarles and the close surveillance of Kinnie by all of the agents), the positive field test, and the stipulation that a subsequent chemical analysis confirmed the substance given to Kinnie by defendant was cocaine. Further, the credibility of the witnesses, as determined by the court as trier of fact, was not so unsatisfactory as to raise a reasonable doubt of defendant's guilt. See *People v. Pittman*, 93 Ill. 2d at 175.

## II

Defendant alternatively requests he be granted a new trial because of an alleged appearance of impropriety created by a former attorney-client relationship between defendant and the trial judge. Defendant's written post-trial motion alleged that the trial judge, Richard Neville, represented defendant five years earlier in 1982 in an unrelated criminal matter; at the hearing, however, counsel clarified that defendant actually was represented by Judge Neville's former law partner, Mr. Walsh, from the firm Walsh and Neville. Relying on agency principles, defendant argues that Supreme Court Rule 63(C)(1)(c) (113 Ill. 2d R. 63(C)(1)(c)) prohibited Judge Neville from hearing the instant case because he was Walsh's partner during the previous representation. Defendant also maintains that Judge Neville's participation in the matter violated the rules of judicial conduct by creating the appearance of impropriety.

At the post-trial hearing, the circuit court summarized the nature of Walsh's earlier representation: defendant was indicted in 1982 for a narcotics-related offense; Walsh appeared on behalf of defendant at the arraignment on March 8; some discovery matters were filed on April 15; on May 27 there was a bond forfeiture and a warrant issued for defendant's arrest; defendant was arrested sometime later; and on August 26 the law firm of Walsh and Neville withdrew from the case. Judge Neville stated that neither he nor the law firm of Walsh and Neville represented defendant at the trial of that matter, but only during some discovery proceedings which occurred over one year prior to a final disposition in the case. The judge did not address defendant's claim that he paid a $5,000 fee to the law firm in the 1982 matter; however, he did stress that he did not remember defendant or the law firm's prior representation of him. In denying defendant's motion, Judge Neville commented that the allegation concerning the appear-

ance of impropriety was a "blanket statement" unsupported by any specific facts.

■ The State initially contends defendant waived this issue by failing to mention it at trial, first raising the question in his post-trial motion. Failure to raise an issue both at trial and in a written post-trial motion ordinarily results in waiver of the matter on appeal (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274); the waiver rule may be relaxed, however, when both the right of a defendant to an impartial trial and the duty of the court to avoid any appearance of impropriety are implicated. *People v. Austin* (1983), 116 Ill. App. 3d 95, 101, 451 N.E.2d 593.

■ The State nevertheless insists that our review of the issue will reward defendant for his omission to act during trial. We recognize, as did the trial judge, that a defendant might attempt to gain the best of both worlds by failing to raise the issue at trial, then later appeal the verdict under Rule 63(C)(1)(c) if that result was unfavorable to him. If such conduct were reflected in the record, we would hold that defendant invited error and knowingly waived any objection to it. (*People v. Austin*, 116 Ill. App. 3d at 101.) Here, however, the record indicates defendant did not recognize that the judge was his previous attorney's former partner until after the trial, and the judge also was not aware of any potential conflict. Without more, we cannot say defendant invited error and thus decline to apply the waiver rule. *People v. Austin*, 116 Ill. App. 3d at 101-02.

Turning to the merits, research reveals no case law interpreting amended Supreme Court Rule 63(C)(1)(c), on which defendant's claim is based.[1] (113 Ill. 2d R. 63(C)(1)(c).) This rule, as amended, incorporates former Supreme Court Rules 61 and 67. Former Rule 61 provided (73 Ill. 2d R. 61(c)(4)):

> "A judge's official conduct should be free from impropriety and the appearance of impropriety *** ."

Former Rule 67(c) provided (73 Ill. 2d R. 67(c)):

> "A judge shall not participate in any case in which he has pre-

---

[1]In his brief, defendant bases his argument on the amended rule. (113 Ill. 2d R. 63(C).) At the commencement of trial, the amended rule had not yet been adopted, and former Rule 67(c) was still in effect. (73 Ill. 2d R. 67(c).) On August 1, 1987, 10 days after the trial, but before argument on the post-trial motion when the issue was first raised, the amended rule became effective. We need not engage in lengthy discussion to determine the controlling provision; the revisions in the amended rule do not affect our subsequent analysis. We therefore accept, for purposes of this opinion, defendant's reliance on amended Rule 63(C).

viously acted as counsel. He cannot rid himself of this responsibility by consent of counsel or the parties to the case."

The amended Rule 63 does not depart radically from the replaced provisions; instead, the applicable section "represents a lessening of the restrictions placed on the involvement of a judge in a case in which one of the attorneys is someone with whom the judge was formerly associated." (See Ill. Ann. Stat., ch. 110A, par. 63, Historical and Practice Notes, at 24 (Smith-Hurd Supp. 1989).) The amended Rule 63 provides (113 Ill. 2d R. 63(C)(1)(c)):

> "(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where
>
> * * *
>
> (c) he was, within the preceding three years, associated in the private practice of law with any law firm or lawyer currently representing any party in the controversy (provided that referral of cases when no monetary interest was retained shall not be deemed an association within the meaning of this subsection) or, for a period of seven years following the last date on which he represented such a party, he represented any party to the controversy while he was an attorney engaged in the private practice of law."

▇▇ Since amended Rule 63(C)(1)(c) incorporates former Rules 61(c)(4) and 67(c), we look to decisions interpreting those rules for guidance. These cases held that Rule 67(c) did not require a judge to recuse himself or risk reversible error any time he had knowledge of, contact with, or some interest in the case. (*People v. Del Vecchio* (1989), 129 Ill. 2d 265, 276-77; *People v. Lipa* (1982), 109 Ill. App. 3d 610, 613, 440 N.E.2d 1062; *People v. Burnett* (1979), 73 Ill. App. 3d 750, 754-55, 392 N.E.2d 235.) Further, it did not require a judge to withdraw even though he had been involved in a previous stage of the case. (*United States ex rel. Link v. Lane* (7th Cir. 1987), 811 F.2d 1166, 1171.) As recently summarized by our supreme court, "[m]erely having a previous involvement with a defendant does not, *per se*, require disqualification. The important phrase is 'acted as counsel.' " (*People v. Del Vecchio*, 129 Ill. 2d at 277.) The words "acted as counsel" must be given their plain meaning and apply to a judicial officer who actually was involved in the prosecution or defense of a defendant's case. (*People v. Burnett*, 73 Ill. App. 3d at 754.) Similarly, the words of the amended provision, Rule 63(C)(1)(c), referring to a judge who "represented any party to the controversy," should be given their plain meaning; it likewise applies to a judge who was actually involved in the

prosecution or defense of a defendant's case.

In the following circumstances, a trial judge's former involvement with a defendant was found *not* to have constituted "acting as counsel": (1) the judge, in a supervisory capacity with the State's Attorney's office, assigned an earlier, unrelated case involving defendant to an attorney in that office, and later agreed, at the request of defense counsel, to expedite the indictment so defendant could be sentenced as a youth (*People v. Del Vecchio*, 129 Ill. 2d at 277-78); (2) the judge, in a supervisory capacity with the State's Attorney's office at the time of defendant's indictment, approved a grand jury subpoena for some records in the case (*People v. Lipa*, 109 Ill. App. 3d 610, 440 N.E.2d 1062); (3) the judge was in a supervisory capacity with the State's Attorney's office at the Richard J. Daley Center where defendant's case previously had been pending and where a bond forfeiture hearing had been held (*People v. Burnett*, 73 Ill. App. 3d 750, 392 N.E.2d 235); and (4) the judge, as an assistant State's Attorney, appeared before a grand jury hearing investigating the defendants and had assisted in the preparation of a related memorandum. (*United States ex rel. Link*, 811 F.2d 1166.) Further, in *Lipa*, *Burnett*, and *Link*, the trial judge disavowed any memory of his former involvement with the defendant's earlier case.

Defendant relies on *People v. Austin* (1983), 116 Ill. App. 3d 95, 451 N.E.2d 593, wherein the trial judge, a former public defender, was held to have "acted as counsel" when he appeared on defendant's behalf at a preliminary hearing in the same case. In holding that the trial judge should have recused himself, the *Austin* court recognized that, although Rule 67(c) primarily addressed the ethical responsibility of the Illinois judiciary, it also reflected a deeper policy judgment that a party, in fairness, should not be tried before a judge with whom he had a prior attorney-client relationship in that same cause. (116 Ill. App. 3d at 100.) The court further noted that even if the judge's involvement as an attorney for the defendant was minimal, the determinative factor was the effect of the appearance rather than a demonstration of impropriety; mere representation, however brief, was sufficient to require recusal. *People v. Austin*, 116 Ill. App. 3d at 100.

*Austin* is distinguishable from the instant case in two important respects. There, the trial judge himself had represented defendant; further, he represented defendant in the *same* cause over which he later presided as judge. Here, the record indicates that Judge Neville himself never actually represented defendant; rather, his partner in the law firm appeared on behalf of defendant. Also, that partner's representation involved a matter completely unrelated to the instant case

over which Judge Neville presided.

Other than Judge Neville's previous affiliation with Walsh, defendant presents nothing that suggests the judge's actual involvement in the defense of the former cause. Defendant's speculations that the judge "appeared" for defendant in the earlier case, or that a dispute between defendant and the firm occurred over money, are unfounded. Nothing appears in the record contradicting Judge Neville's assertion that he did not remember defendant, but if he had, he would have mentioned it immediately. Based on this record, it cannot be said that Judge Neville "represented any party" to the earlier controversy. See *People v. Del Vecchio*, 129 Ill. 2d at 277-78.

██ In light of the foregoing, we do not believe Rule 63(C)(1)(c) was violated. In addition, since any earlier relationship between Judge Neville and defendant never constituted "representation," no appearance of impropriety was created here; unlike *Austin,* his involvement with defendant's case cannot even be said to be minimal. (*People v. Austin,* 116 Ill. App. 3d at 100.) We reject defendant's contention that it was error to deny his motion for a new trial.

For the reasons stated above, the judgment of the circuit court is affirmed.

Judgment affirmed.

BILANDIC, P.J., and DiVITO, J., concur.